JOHN B. ELLISON *vs.* WILLIAM H. TRUESDALE, Receiver, &c.

Argued Jan. 14, 1892.   Decided April 7, 1892.

**Negligence of Defendant not Shown.**—A brakeman on a freight train, going between moving cars in the nighttime to uncouple them, was run over and killed. *Held,* upon the evidence, that the theory that the accident was caused by his stepping in a shallow hole, found in the vicinity, rested upon mere conjecture, and was not so probable as to justify a verdict to that effect.

Appeal by plaintiff, John B. Ellison, from an order of the District Court of Hennepin County, Smith, J., made September 8, 1891, refusing his application for a new trial of the action.

The defendant, William H. Truesdale, was on June 28, 1888, appointed receiver of the property of the Minneapolis & St. Louis Railway Company, and since that date has operated its lines of railway in behalf of its creditors. Harvey H. Ellison, a boy nineteen years old, was on October 10, 1890, at work for defendant as a brakeman upon a freight train which goes south through Young America at midnight. At that station he opened the switch in rear of his train, went forward and gave the engineer the signal to back, and then stepped in between the last car and the others and uncoupled it while moving, intending to leave it on the side track. He did not reappear to give the engineer the next expected signal to stop, and when found he was lying outside the track near the switch, limbs crushed, bowels out, still alive, but unable to speak. He died immediately, and his father, John B. Ellison, was afterwards appointed.

administrator of his estate. On leave obtained, the administrator brought this action for $10,000 damages to the next of kin under 1878 G. S. ch. 77, § 2, as amended by Laws 1889, ch. 109. He claimed the boy was killed in consequence of defendant's negligence in failing to keep the railroad track near the switch free from holes, and in suitable condition for the safety of brakemen while setting out or taking in freight cars.

The action was tried May 12, 1891. When the evidence had all been given, defendant asked the court to direct the jury to return a verdict for defendant on the ground, among others, that the evidence was insufficient to establish negligence on the part of defendant. The court granted the request, saying:

"The particular negligence alleged on the part of the defendant was permitting a hole to exist between the ties, and between the rails on the roadbed where the deceased and other employes engaged in the same business were required to go for the purpose of disconnecting and connecting the cars of the train. This hole was not over three inches deep, and did not exceed a foot in diameter as claimed by defendant, and was scooped out on each side. The plaintiff is required to prove that the deceased by reason of that defect in the roadbed was injured, that it caused his death. Now, all the evidence in reference to this is that the body lay at a distance of between eleven and twelve feet from the place, and there were marks of blood upon the rails. It is largely a question of conjecture and speculation how the accident occurred. The evidence is not enough to support a verdict for the plaintiff. To entitle the plaintiff to recover it is necessary for him to show that defendant had, or ought to have had, notice or knowledge of the defect in the roadbed prior to the accident. There is no claim that the receiver or his servants had any actual notice. There is no proof that anybody ever saw this hole prior to the accident, either the employes of the defendant, or any one else. The plaintiff rests his claim upon the proposition that the defect had been there for such a length of time that the defendant would, in the exercise of ordinary care in inspecting the roadbed, have known that it was there; but there is no proof how long the defect had existed. I am also of

the opinion that the deceased was guilty of contributory negligence. It appears that deceased had control of the train at the time. It moved as he signaled. There is no claim that the train did not move in every particular as he directed it by his signals to the engineer. Without contradiction there was a safe way of doing this business. It was not necessary for him to go in there between the cars while the train was in motion, and it seems to be conceded that it is dangerous for any one to go between cars to uncouple them when they are in motion. When he could have performed his duty safely, it is the judgment of the court that he should have so done it, and not have taken the risk of his life in performing it another way. For these reasons, and perhaps some others not stated, I shall grant the motion and direct the jury to bring in a verdict for the defendant."

The discussion in this court was principally as the evidence and upon questions of fact. The law and its application were not in dispute.

*F. D. Larrabee*, for appellant.

*Albert E. Clarke* and *Wilbur F. Booth*, for respondent.

DICKINSON, J. This action is prosecuted to recover for alleged negligence causing the death of plaintiff's intestate. The deceased was employed as a brakeman on a freight train of the defendant. At a certain station on the road the track runs north and south. The train on which the deceased was acting as a brakeman came to this station in the night going south. In the course of the business at that place the engine with eight cars ran on the main track to a point just south of a switch, and stopped. The rear car was to be set back on a side track diverging from the main track at this switch and running north. The deceased turned the switch for this purpose, and then ran down beside the car which was to be switched off, gave a signal with his lantern to the engineer to back up, and then stepped in between the cars to uncouple the rear car, so that it might be sent on the side track by the backward motion of the train. The train was backed immediately upon his signal being given. He did not come out from between the cars, but from some cause he

was run over and killed. The only negligence attributed to the defendant is that there was a hole in the ground between the rails at this place which the defendant had neglected to fill up; and the theory of the plaintiff is that the deceased, while engaged in uncoupling the cars, stepped in this hole, and fell or was thrown down by reason of it. At the close of the trial the court directed a verdict for the defendant upon the grounds that the deceased was guilty of negligence in giving the signal for the moving of the train, and then going between the cars; and, further, because it was considered that the evidence was insufficient to charge the defendant with notice of the existence of the hole. The court also indicated that it regarded the evidence connecting the accident with the existence of the hole as being unsatisfactory, but the decision was not put upon that ground. It is our opinion that the evidence leaves it only to be conjectured that the accident *may* have been caused by the deceased stepping into the hole, but that it does not present substantial proof that such was the fact; and as, upon this ground, we affirm the ruling of the court, it will be unnecessary to consider whether the same conclusion should be reached for other reasons.

The hole was a depression in the earth between the ties, the depth of which is variously estimated at from one and a half to three or four inches, and about a foot across at the top. It was shaped like a saucer, with sloping sides. It was near the place where the deceased went in between the cars, and some eleven feet from the place where his body was found immediately after the injury. There was evidence of the appearance of a footprint in this depression, but this was not discovered until after at least four men had come to the place, and had taken care of and removed the dead body; and there seems to be no more reason for inferring that the footprint was made by the deceased than that it was made by some of the other men just referred to. If there had been no apparent danger in the situation, except such as might have arisen from the existence of the hole, if the accident could not as well be attributed to other causes, the evidence would probably have justified the jury in inferring that this was the cause of it. But there is the insuperable objection to the plaintiff's theory of the case. There is no proof that the deceased did step in

this place, and, even if he did, it would be a matter of doubt—but perhaps for the jury—whether it caused him to fall. Independent of this defect in the roadbed, the deceased was in an obviously dangerous situation when the accident occurred. We are not touching upon the question of contributory negligence, but of the risk to which he was exposed,—whether that was an ordinary risk, necessarily incurred, or negligently assumed. The danger of going in between the cars just as they were being shoved backward (and hence forced together) is obvious, and especially when this was done in the darkness of night, there being no light save from the lantern carried by the deceased, and which would somewhat hinder the free use of his hands. Hence the unfortunate consequence in this case may be attributed to other causes as well as to that upon which the plaintiff's right of recovery is placed. The probability that the accident was caused by the deceased stepping in this depression seems to be at least no greater than that it was caused in some other way equally consistent with the circumstances disclosed by the evidence. It may just as well be supposed that he was caught between the cars as they were forced together by the backward motion of the engine, or that, while between the moving cars, he made some misstep, from which, in that situation, he was not able to recover. This might occur irrespective of any real defects in the roadbed. But the evidence shows the condition of the roadbed to have been such that, even if it is to be inferred that the deceased was caused to stumble or to make any misstep by reason of any obstruction or inequality in the surface of the ground at this place, still there is at least as strong a probability that other obstructions, concerning which no negligence is alleged, caused the misstep, as that the shallow sloping depression in the earth caused it. Photographs of the ground and track at this place were put in evidence which showed the rails resting on the cross-ties, and a generally somewhat uneven surface of earth between the ties, the earth being filled up about to the top of the ties in the center of the roadbed, but sloping downward from the center, so as to leave the square cross-ties, at a point just within the rail, elevated considerably above the earth; and at the ends of the ties outside of the rails there was little or no filling

between the ties, the ends of the ties resting on the surface of the earth. The probability that these many ties, rising with perpendicular sides above the surface of the earth, might cause one in the situation of the deceased to misstep or to lose his footing seems to be greater than that such a result should come from the one sloping depression referred to.

Enough has been said to show that a finding that the injury was caused by the hole could rest only upon the bare conjecture that such *may have been* the fact. Such a verdict, if found, could not express the intelligent conviction of the jury from the evidence that this theory was *probably* true. Hence the court properly directed the jury as to the verdict.

Order affirmed.

GILFILLAN, C. J., was not present, and did not take part in this decision.

(Opinion published 51 N. W. Rep. 918.)