KATE A. GRIFFITH V. ALBERT C. SMITH.

[FILED JUNE 14, 1889.]

**Limitation of Actions: ADVERSE POSSESSION.** One who is in the adverse possession of land does not impair his right to rely upon the statute of limitations, by purchasing the land at a tax sale, and receiving and recording a tax deed therefor; nor does such purchase or recording, or both together, cause a break in the running of the statute of limitations.

ERROR to the district court for Douglas county. Tried below before WAKELEY, J.

*Joseph H. Blair*, for plaintiff in error, cited: *Armstrong v. Morrill*, 14 Wall., 121, 145, 146; 3 Washburn on Real Property, 5th Ed., 148; Sedgwick & Wait on Trial of Title, 2d Ed., sec. 746; Wood on Limitations, p 577.

*Lake & Hamilton*, appearing by special leave of the court, cited: Am. and Eng. Encyc. of Law, vol. 1, p. 273; *Parsons v. Viets*, 9 S. W. Rep., 908.

COBB, J.

This was an action *quia timet* in the district court of Douglas county by Albert C. Smith, plaintiff, against Kate A. Griffith, defendant.

The petition alleges that the plaintiff is the owner in possession, and for more than ten years prior to the bringing of this suit had been in the actual, open, adverse, peaceable, and continued possession, of lot six in block nineteen, in the city of Florence, in said county, and by reason thereof had acquired title thereto.

2. That the defendant claims some title, estate, or interest, in and to said lot, adverse to the plaintiff by reason of an instrument of record, purporting to convey the same

to her; but whatever interest she may have had by reason of such conveyance in and to said lot, is subject and inferior to the title of plaintiff, and casts a cloud thereon which should be removed; with prayer that the title to and possession of said lot may be quieted in him.

The answer of the defendant sets up that her name is Katherine A. Griffith Boyd; that she is the identical person named as grantee in a certain deed of conveyance of lot six in block nineteen, in the city of Florence, in said county, from Henry J. Runnels, grantor, dated April 2, 1862, and recorded, and that she has been ever since that date the owner thereof.

She admits that since about March 28, 1874, the plaintiff and his immediate grantor, Mary Dunk, have been in the continued possession of said lot, but denies that such possession has been during all this time adverse to the defendant, for the reason that there has been an acknowledgment and recognition of defendant's ownership by the plaintiff and his immediate grantor within ten years, and that since such acknowledgment and recognition, ten years prior to the commencement of this suit, had not elapsed.

3. That in or about the month of March, 1874, Mary Dunk, the immediate grantor of plaintiff, entered into possession of said lot, and was in possession on March 28, 1874, when the same was sold for taxes.

4. That from and after April 1, 1862, the date of Runnels's deed to defendant, and up to and including the year 1872 (except 1865), all of the taxes against said lot became delinquent and remained so on March 28, 1874.

5. That on March 28, 1874, the county treasurer of said county pretended to sell said lot to Samuel Scott, at private sale, for the taxes of 1872 alone, and for no other year or years, and issued to Scott a treasurer's certificate of sale; that Scott did not purchase said lot, nor was it sold for the then delinquent taxes of any year other than 1872, leaving the delinquent taxes for the years 1861, 1862, 1863,

1864, 1866, 1867, 1868, 1869, 1870 unpaid and omitted; nor did Scott then or at any time pay the taxes for any of the last-named years.

6. That afterward Scott assigned and delivered his certificate of sale to Mary Dunk, then in possession of the lot, who presented the certificate November 16, 1877, to the county treasurer, demanded and received a treasurer's deed therefor, without paying any of the delinquent taxes for the years last mentioned; that afterward Mary Dunk, without other title than that of said pretended deed, executed and delivered to the plaintiff a deed for said lot; and the plaintiff had full knowledge of the facts stated.

7. That the tax sale was illegal and void, because the lot was not sold for all the taxes then delinquent against it, and because none of the delinquent taxes, other than that of 1872, have ever been paid by Scott, Mary Dunk, or the plaintiff.

8. That the tax deed is void, because at the time of the sale to Scott the county treasurer had not filed in the county clerk's office any return of the sale of real property for taxes, at public sale, for the year in which the sale was made, nor for which such taxes were assessed and delinquent, as required by law, by reason of which he had no power or authority to sell said lot at private sale.

9. That the tax deed is void, because it does not show that the lot was sold "at the court house door," as required by law; nor does it show where the sale was made.

10. That the tax deed is void, because the county treasurer failed to attest the same with his official seal, and the seal of the treasurer was not affixed to it.

11. That the plaintiff's immediate grantor, Mary Dunk, by her purchase of the tax certificate from Scott, and by accepting the tax deed from the county treasurer on November 16, 1877, acknowledged, confessed, and recognized the title and ownership and the right of possession of defendant to said lot, or of some one other than herself, and

4

that her possession, prior thereto, and up to that time, was inferior and subject to the ownership of defendant, or such other person.

12. That ten years had not elapsed between the date of the tax deed and the commencement of this suit; and denies that the plaintiff for more than ten years prior to the commencement had been in the actual, open, adverse, peaceable, and continued possession of the lot; and denies that the plaintiff and his immediate grantor have been in any possession except as shown herein.

13. That defendant has at all times been ready and willing to repay plaintiff all sums of money he has at any time paid for taxes assessed against said lot that are due and coming to him, with interest, and now tenders the same, and will perform any other order of the court herein, in reference thereto; with prayer that the pretended treasurer's deed, and the deed of Mary Dunk to the plaintiff, be declared void and canceled, and that the petition be dismissed, and for general relief, etc.

The plaintiff interposed a general demurrer to the answer, which was sustained; and the defendant not electing to amend or to further answer, there was a finding and final decree for the plaintiff. The cause is brought to this court on error by the defendant.

The point on which the plaintiff in error relies, and which is presented in an able and exhaustive brief, and was most forcibly argued at the bar, is that the plaintiff's grantor, Mary Dunk, in purchasing a tax certificate of sale of the lot from Samuel Scott, which he had bought from the county treasurer, and taking out a tax deed on such certificate, thereby abandoned her possession of the lot, and acknowledged the superiority of the title of the original and former owner.

The principal case relied upon by counsel is that of *Armstrong v. Morrill*, 14 Wall., 12 46. This cause came to the supreme court of the United States from the United

States district court of West Virginia, involving the title to 1,500 acres of land in that state. The case, in premises and conclusion, is tedious and involved. The opinion of a majority of the court, by Justice Clifford, does, I think, upon the face of the authority, sustain the argument of the counsel for the plaintiff in error in the case at bar; but I hold it altogether inapplicable here, for the reason of the wide difference between the system and theory of land taxation which existed in Virginia at the beginning of the century, and that of this state.

In the first place, it should be borne in mind that by the Virginia law the public domain of that state was the original and ultimate property of the state, never having been under the control of the United States. It was the theory of taxation of that state, at least applied to the unsettled land west of the mountains, that upon non-payment of taxes for a period of years the title became forfeited by the claimant, or grantee of the state, and reverted to the state without process of law or any action of the state. Such were the provisions of an act of the legislature of that state, passed February 27, 1835, as construed by the court of appeals in the case of *Staats v. Board*, 10 Grattan, 400, cited in a note to the opinion considered. In that case, under the provisions of the act of Virginia referred to, the land involved in the controversy became absolutely forfeited to the state for the non-payment of taxes. Before forfeiture, it appears that certain of the defendants had taken adverse possession of small portions of the land, and were in possession at the time and during the continuance of the forfeiture to the state. Afterward the original owners, or their grantees, applied to the legislature and obtained an act allowing them to redeem the whole or any part of lands forfeited by entering them on the books of the commissioners of revenue to be assessed with all the taxes due thereon, and paying the same into the state treasury on the 1st of June of the ensuing year, with six per cent per

annum damages thereon. The defendants, adverse occu-pants of the land, for aught that appears, were utterly igno-rant as well of the forfeiture as of the terms of redemption of their lands.   The term of their occupancy before the forfeiture, as shown by evidence, was less than fourteen years, as was also the term of their adverse occupancy after the redemption; fourteen years being the term required by the statute then in force to give title to land by adverse possession.   The supreme court, by its majority opinion, sustained the district court of West Virginia, *instructing* the jury that the statute of limitations ceased to run when the land became forfeited to the state; and that the period of adverse possession, before the forfeiture, could not be added to that which elapsed before the suit was commenced sub-sequent to the time the title, under the act of the legislature, was conveyed to the plaintiff's grantors, to make up the required term of fourteen years to bar the title; and also in *refusing* to instruct the jury that if they find that adver-sary possession commenced before November 1, 1836, and continued during the time of the forfeiture, as well as from May 8, 1845, the date of redemption, up to the commence-ment of the suit, and by adding the time of adversary possession before forfeiture to that after redemption, makes a period of fourteen years, then the jury must find for such of the defendants as make out the term of fourteen years.

And though one conversant with the views and maxims of the present day is more likely to agree with the opinion of the minority of the court, expressed in the case by Justice Strong, yet in the spirit and upon the theory of the land and revenue systems of Virginia then in force, it is probable that the majority of the court decided right, and held correctly.

I do not think, however, that the same rule of law is now applicable here.   When the public authorities in this state sell the land of an individual for the purpose of col-

lecting an assessment for taxes, they do not proceed upon the theory of forfeiture. Here, the state never owned the body of the land. The land-owner holds by no tenure derived from the state. Hence the theory of forfeiture has no application here; while in Virginia, the title to land being derived from the state, taxes seem to have been laid upon land-holders on the principle that military service, and the like, were exacted from those holding under the feudal lords and barons of England in a remote age. That is not our theory of taxes in this state. The owners of real property, in consideration of the equal protection of the laws, owe to the public authority contributions in proportion to the value of their estate, sufficient to pay the public charges, merely. When this obligation is not voluntarily discharged, the law has provided an expeditious and inexpensive procedure by which a portion of the delinquent's property may be sold, and the proceeds applied to the discharge of the obligation; but this is neither of the principle nor theory of confiscation and forfeiture, but that of the collection of a debt, with provision for its subsequent discharge.

If we apply this principle to the case at bar, we find the plaintiff's grantor in the possession of the lot. Before she took possession, the defendant or her predecessors in the ownership of the lot having failed to pay their taxes for a series of years, the annual amounts stood charged up against it, delinquent. These sums were a lien upon the lot itself, without regard to the individual owner of it. In this condition, Samuel Scott, supposed to be an investor for money and a high rate of interest, became the purchaser of the lot for delinqent taxes. Under the theory of the law, unless the lot was redeemed from this purchase within two years, his title would become absolute. Therefore, if Mary Dunk stood by until this term of two years expired, no matter who was the owner of the lot, it would be lost to her. She could prevent this by one of two

ways: first, by going into the treasurer's office and re-deeming the lot by paying the amount of the taxes and costs; or by doing as she did, purchasing of Scott his cer-tificate of the purchase and sale of the lot for taxes. Had she stopped there, it would not probably be now contended that she had acknowledged the title of any former claimant, while she had in fact adopted the act of Scott in purchasing the lot for delinquent taxes.

But it is contended that by presenting the certificate after the expiration of the two years allowed for redemp-tion, and taking a deed to herself, she abandoned her claim of adverse possession, and went into possession under the original owner. To the logic of this argument I cannot concede; but, on the contrary, it seems to me that all this was in defense of her own independent, ad-verse occupation of the lot. Her adverse possession was against the original owner, and not against the taxing power of the state.

The case of *Parsons v. Viets*, 9 S. W. Rep., 908, counsel for plaintiff in error cites as against his position. In that case the defendant purchased the land at a tax sale and immediately entered into possession; remained in possession the ten years necessary to give title by adverse possession, but at the expiration of two years from the date of pur-chase, the defendant, or those under whom he claimed, took out a tax deed upon the certificate. These two years, which had already expired at the time of taking out the tax deed, were necessary to be counted in order to make out the term of ten years' adverse possession; and this was allowed by the court. Upon the theory contended for by the plaintiff in error, these two years would have been excluded.

The case of *Hayes v. Martin*, 45 Cal., 559, cited by counsel for defendant in error, is one precisely in point. I quote from the syllabus, that "One who is in the ad-verse possession of land does not impair his right to rely

upon the statute of limitations by purchasing the land at a tax sale, unless he makes the purchase for the owner under an agreement to have a lease of the land or a portion thereof, which would amount to a recognition of the owner's title, and stop the running of the statute."

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.