WILLIAM BUXTON *et al. vs.* ALONZO H. BEAL.

Argued Jan. 29, 1892.  Decided April 1, 1892.

**Evidence—Parol Explanation of Writing between Others.**—The plaintiffs, real-estate agents, were to receive certain commissions for services in securing a lessee for defendant upon terms specifically agreed on between the parties, and they procured an informal agreement for a lease to be signed by the defendant and an applicant for a lease. *Held,* that the defendant might show by parol, as against these plaintiffs, that the contract was merely provisional, and did not express all the terms of the lease to be entered into by the parties, as was also understood by plaintiffs; and that the lease was never consummated, because no final agreement was ever made between defendant and the lessee.

Appeal by plaintiffs, William Buxton and Kenneth MacRae, from an order of the District Court of Hennepin County, *Hicks,* J., made September 11, 1891, refusing their application for a new trial of the action.

The defendant, Alonzo H. Beal, in September, 1890, owned a lot on Fourth street, between Nicollet and Hennepin avenues, in Minneapolis, Minn., twenty-five feet front by one hundred and fifty-seven feet deep. There was an old wooden building on it in which Mr. Beal had long kept a photograph gallery. The plaintiffs were partners doing business at Minneapolis, buying and selling real estate for others upon commission. On September 20, 1890, they called upon defendant and obtained from him oral authority to lease this lot or find a tenant for it for a long term of years. They were in that event to have $500 for their services. They soon after found Eric Lund willing to take a lease and introduced him to defendant. Mr. Lund and he discussed the business between them at different times within the next few days, when Lund made the following written offer, and Mr. Beal accepted it:

"MINNEAPOLIS, MINN., Sept. 26, 1890.

*A. H. Beal, Esq., City*—DEAR SIR: I hereby accept your proposition of one hundred years' lease on your property on 4th st., being numbered 18 S. 4th St., said lease to be on following terms: To run

for one hundred years six per cent. flat valuation on $35,000 being $2,100 yearly, rents to be payable quarterly in advance. I agree to pay taxes and all assessments to become due. I accept property subject to thirty days' notice to tenant. A proper lease to be drawn and signed within five days.

Yours truly,      ERIC LUND.

I accept above terms.      A. H. BEAL."

The lot was within the fire limits and it was understood that defendant was to have the usual customary lease, that the old wooden building should be removed by Lund, and that he should build a new one of brick and stone in its place. They went to a lawyer to draft a formal lease, but difficulties arose between them as to its terms and details. Defendant wanted a bond to secure him against liens upon the lot and building that Mr. Lund proposed to erect. Lund refused to give any bond and went away. Nothing further was done in regard to the matter and Lund refused to take a lease. The plaintiffs claimed they had earned and were entitled to the $500 commission, and brought this action to recover that sum. It was tried February 6, 1891. After the plaintiffs had introduced their evidence and rested, the defendant asked the court to dismiss the action on the ground that the evidence was insufficient to sustain a verdict for plaintiffs. The court granted the motion and plaintiffs excepted. They afterwards made a case containing exceptions and it was settled and signed by the Judge. On it they moved the court for a new trial on the ground that the order dismissing the action was not justified by the evidence and was contrary to law.

On July 1, 1891, this motion was argued in the trial court and on September 11, 1891, denied. That court stated that the rule laid down by Jessel, Master of the Rolls, in *Winn* v. *Bull*, 7 C. D. 29, was applicable to the facts and decisive of this case. From that decision this appeal was taken.

*E. D. Jackson*, for appellant.

The plaintiffs can maintain their action if they procured a proposed tenant with whom the defendant made a binding agreement,

*Francis* v. *Baker,* 45 Minn. 83; and so, even if the agreement was thereafter abandoned by the parties. *Potvin* v. *Curran,* 13 Neb. 302; *Pearson* v. *Mason,* 120 Mass. 53; *Rice* v. *Mayo,* 107 Mass. 550; *Veazie* v. *Parker,* 72 Me. 443.

The agreement was binding upon the parties to it, and was such that specific performance would have been decreed. It was complete and certain in its terms. The terms of a mere preliminary agreement need not be as precise as the more formal lease, and yet bind the parties. The mere fact that the parties have expressly stipulated that there should afterwards be a formal agreement prepared, does not by itself show that they continue in negotiation. *Rossiter* v. *Miller,* L. R. 3 App. Cas. 1124.

By the terms of the agreement a formal lease was to be executed within five days; thus fixing a definite limit within which the term should begin, and upon execution of the lease and delivery of possession of the premises thereunder, the parties would fix the beginning of the term by performance of the agreement within the five days.

*Kitchel, Cohen & Shaw,* for respondent.

Plaintiffs cannot recover in this action unless the defendant accepted the lessee proposed by them, and entered into an enforceable contract with him for the leasing of the property in question. This doctrine has been recently stated by this court. *Francis* v. *Baker,* 45 Minn. 83; *Rothschild* v. *Burritt,* 47 Minn. 28.

When a written instrument by its terms contemplates the making and signing of another instrument, the question whether the first instrument is a final and enforceable contract, or merely a promissory statement of an intention to enter into an agreement in the future, depends upon the intention of the parties to be gathered from the original writing itself, and from the surrounding circumstances. Where the primary writing sets forth all the terms and conditions, the mere intention to make a more formal writing in the future, will not prevent the original writing from being an enforceable contract; because in that case the minds of the parties have met, and the additional writing is merely ancillary matter of form. But where it

appears from the paper itself that another instrument not merely formal in character is contemplated, and that from the nature of the subject-matter the primary writing does not contain all the terms upon which the parties intend to agree, it is not an enforceable contract. Pol. Cont. p. 41; Bish. Cont. § 319.

The text books are sustained by the following English authorities: *Chinnock* v. *Marchioness of Ely*, 4 De Gex, J. & S. 638; *Rossiter* v. *Miller*, 3 App. Cas. 1124; *Ridgway* v. *Wharton*, 6 H. L. Cas. 238; *Winn* v. *Bull*, 7 C. D. 29; *Bonnewell* v. *Jenkins*, 8 C. D. 70; *Lewis* v. *Brass*, 3 Q. B. D. 667; *Hawkesworth* v. *Chaffey*, 54 Law T. (N. S.) 72.

The principal American cases are *Lyman* v. *Robinson*, 14 Allen, 242; *Brown* v. *New York Central R. Co.*, 44 N. Y. 79; *Moulton* v. *Kershaw*, 59 Wis. 316; *Scanlon* v. *Oliver*, 42 Minn. 538.

VANDERBURGH, J. The defendant and his wife were the owners of a certain building lot in the city of Minneapolis, which they desired to lease for a long term of years. The plaintiffs were real-estate brokers, and as such undertook, with defendant's consent, to procure a lessee for the lot, on terms fixed by the defendant, for a period of 50 or 100 years, to be embraced in a lease to be made between the parties. It was understood in the negotiations between the plaintiffs and defendant that he would require a lease whose terms would protect his rights fully, and would want a competent attorney to prepare it. It was also understood and assumed that the lessee would necessarily improve the lot by the erection of a costly building thereon in place of the present wooden structure, and that the right to so improve the property would be the principal inducement for entering into the lease by the lessee. Under these circumstances, and with the understanding that the terms of the lease should otherwise be left to be adjusted when the lease should be drawn, it was agreed by parol between these parties that, if the plaintiffs would procure an acceptable lessee for the term proposed, at a fixed ground rent of $2,100 per year, payable quarterly in advance, together with all taxes and assessments upon the premises, thirty days' notice to be given to the

tenant then in possession, defendant would pay the plaintiffs the sum of $500 as commission for their services.   They accordingly produced a customer for the premises upon the terms proposed as to rent, time, and notice, who, in response to his proposition to these plaintiffs, embracing those terms only, addressed the communication to the defendant set out in the foregoing statement of facts.   The defendant thereupon indorsed his acceptance of the terms.

This was a preliminary contract only, leaving the details and further appropriate provisions to be embodied in the proper lease when prepared.

It is clear that both parties to the lease understood that the lease should contain the requisite provisions to effect the purpose for which it was made; and, as against the plaintiffs in this suit, the entire transaction may be shown by parol,—*Van Eman* v. *Stanchfield*, 10 Minn. 256, 266, (Gil. 197,)—and if, as a preliminary agreement, it failed to reserve the right to include in the lease such further terms as were necessary to protect the parties, they were entitled to have the instrument reformed to correspond with the actual intent of the parties thereto.   It is plain enough that both parties understood that the lessee was to have the right to remove the old building and erect a new one, and a "proper" lease would, in that case, provide some guaranty against liens upon the lessor's estate, which belonged to Beal and his wife jointly.   The negotiations fell through because Lund insisted upon a lease giving the right to build, but the parties could not agree touching the details of such provision.   As between these parties, it was the clear understanding that, save as to rentals, and the length of the lease, which defendant must of course determine for himself, the provisions of the lease were left open, and were to be settled when the lease came to be drawn.   In view of the facts above stated, conceding, without deciding, that by a strict construction of the written memorandum the lease would have to be limited to the terms and provisions therein specified, we do not think the plaintiffs should be entitled to a technical advantage from the oversight.   The plaintiffs did not in fact perform the agreement with defendant because the terms of a lease were not agreed on, and a

tenant was not secured; and, as between these parties, the facts may be shown without any reformation of the agreement. The action was properly dismissed.

Order affirmed.

(Opinion published 51 N. W. Rep. 918.)