(Opinion published 52 N. W. Rep. 926.)

---

## ALEXANDER M. CLERIHEW *vs.* WEST SIDE BANK.

Argued June 20, 1892. Decided July 15, 1892.

**Assignment for Benefit of Creditors—Preferences.**

In an action by the assignee of an insolvent debtor against a creditor to recover a preferential payment alleged to have been made by the debtor to the defendant, the defendant, (bank,) denying the payment of any money to it, sought to show by parol that the transaction was really a conveyance of certain land by the debtor pursuant to agreement in satisfaction of his debt to the bank, the conveyance being made to a third party, who took and held the title for the benefit of the bank, so that other creditors of the insolvent might not discover the fact. The bank tendered to the assignee a reconveyance of the land from the party who had thus taken the legal title. *Held,* that such evidence was competent.

**Remedy of Assignee to Recover Land Conveyed as Preference.**

The remedy being available to the assignee to recover back the property (land) conveyed by the insolvent debtor as a preference, that is the proper remedy, and he cannot refuse to take back the property, and elect to recover its value.

**Parol Evidence to Explain Written Instrument.**

Only as between the parties to written instruments and their privies are such instruments conclusive evidence of the transactions to which they relate.

Appeal by defendant, the West Side Bank, from an order of the District Court of Ramsey County, *Kelly,* J., made February 4, 1892, refusing a new trial.

On February 7, 1891, Edward F. Mues, of St. Paul, an insolvent debtor, made an assignment of his property to Alexander M. Clerihew for the benefit of his creditors. On February 4, 1891, Mues owed the West Side Bank $5,500, evidenced by promissory notes which the bank had discounted for him. He was then insolvent, and the bank had knowledge of that fact. This action was brought by Clerihew, as assignee of Mues, to recover $2,500, claiming that sum had been paid by Mues to the bank as a preference. Mues owned a lot in West St. Paul subject to a mortgage of $2,500. The officers of the bank urged him to sell this lot, and apply the proceeds on his indebtedness to the bank. George Marti bought the lot of Mues, and a warranty deed was executed and delivered to him. Marti gave his check for $2,500 on the bank, of which he was a depositor, to Mues, in payment for the property. Mues deposited this check to the credit of his own account in the bank, and against it drew his own check to the order of the bank for $2,529.17, and with it paid $2,500 of his notes held by the bank. Marti, in order to raise the money to buy the lot, made his own note to the bank for $2,500, due in ninety days, which they discounted for him and credited the proceeds to his account as so much cash, before Marti gave the check to Mues. The defendant contended and offered testimony to show that the transaction was as follows: Mues and some of the officers of the bank agreed that Mues should convey the lot to the bank in payment of $2,500 of his indebtedness; in order to conceal the nature of the transaction, the deed was made to George Marti; and that Marti, in order to carry out appearances, made his note for $2,500, due in ninety days; the bank discounted it, and with the proceeds, Marti paid Mues for the lot; it being understood that Marti should not be held liable on his note, and would hold the title to the lot in trust for the bank. In other words, the plaintiff contended that Mues paid the bank $2,500 in money; the defendant, that he simply turned over the lot to it. The bank tendered a deed of the lot to the plaintiff. The verbal testimony of witnesses for defendant explaining the transaction as above, was received by the court subject to objection, but afterwards it was excluded in deciding the case.

The court ordered judgment against the defendant for the sum of $2,500 and interest. A new trial was refused, and defendant appealed.

*O. E. Holman* and *J. M. Hawthorne,* for appellant.

If Mues turned over land to the bank as a preference, the assignee's remedy is to recover the land or the value thereof. Laws 1881, ch. 148, § 4. The excluded testimony was offered to show that the transaction was really a transfer of land, and not of money, as would appear from the writings introduced in evidence by the plaintiff. Oral testimony to explain those writings was admissible on three grounds:

*First.* The contract itself between appellant and Mues was not in writing; the writings were merely given in part performance of it, and the rule excluding parol evidence to vary a written contract does not apply where there is no written contract. *Healy* v. *Young,* 21 Minn. 389; *Keough* v. *McNitt,* 6 Minn. 513, (Gil. 357;) *Wallrich* v. *Hall,* 19 Minn. 383, (Gil. 329;) *Domestic Sewing Machine Co.* v. *Anderson,* 23 Minn. 57; *Boynton Furnace Co.* v. *Clark,* 42 Minn. 337; *Gammon* v. *Ganfield,* 42 Minn. 368; *Alexander* v. *Thompson,* 42 Minn. 498; *Hutchins* v. *Hebbard,* 34 N. Y. 24.

*Second.* The true inquiry is, what consideration did the bank receive for the surrender of the notes? The writings show it to have been cash; defendant's testimony was to explain the real consideration. It is always competent to show by parol the real consideration of a written agreement. *Pray* v. *Rhodes,* 42 Minn. 93; *Bolles* v. *Sachs,* 37 Minn. 315; *Harrington* v. *Samples,* 36 Minn. 200; *Wheeler* v. *Billings,* 38 N. Y. 263; *Ely* v. *Wolcott,* 4 Allen, 506.

*Third.* The rule that parol evidence is inadmissible to vary a written contract applies only between the parties to it and their privies. *Van Eman* v. *Stanchfield,* 10 Minn. 255, (Gil. 197;) *Sanborn* v. *Sturtevant,* 17 Minn. 200, (Gil. 174;) *McMaster* v. *Insurance Co. of N. Amer.,* 55 N. Y. 222; *Pierson* v. *Atlantic Nat. Bank,* 77 N. Y. 304; *Lee* v. *Adsit,* 37 N. Y. 78; *Lowell Mfg. Co.* v. *Safeguard Fire Ins. Co.,* 88 N. Y. 591; *Dempsey* v. *Kipp,* 61 N. Y. 462; *Winslow* v. *Dakota Lumber Co.,* 32 Minn. 237; *Branch* v. *Dawson,*

36 Minn. 193; *Shearer* v. *Babson*, 1 Allen, 486.   Marti, one of the parties to the instruments sought to be explained, is not a party to this action.   This is not an action to establish a trust estate in lands.

*Edward P. Sanborn*, for respondent.

The question is, what were the legal contract relations between Marti and the bank?   The writings show that Marti owned the lot, and the bank held his note for $2,500.   Parol evidence is not admissible to show that he held the lot in trust for the bank.   A trust in lands cannot be created, except by deed.   1878 G. S. ch. 41, § 10; *Wentworth* v. *Wentworth*, 2 Minn. 277, (Gil. 238;) *Randall* v. *Constans*, 33 Minn. 329; *Wolford* v. *Franham*, 44 Minn. 159.   No trust results to the party paying the consideration.   1878 G. S. ch. 43, § 7; *Sumner* v. *Sawtelle*, 8 Minn. 309, (Gil. 272;) *King* v. *Remington*, 36 Minn. 15.   Parol evidence is not admissible to show that Marti was not held liable on the note.   *Curtice* v. *Hokanson*, 38 Minn. 510; *Esch* v. *Hardy*, 22 Minn. 65; *Harrison* v. *Morrison*, 39 Minn. 319.   The relations of the parties are thus fixed by the contract: Marti has the lot and the bank has his note.   Parol evidence is not admissible to vary these relations.

DICKINSON, J.   In February, 1891, Mues, an insolvent debtor, made an assignment to the plaintiff for the benefit of creditors.   This action relates to a transaction which took place three days prior to the assignment.   Mues was then indebted to the defendant bank, which indebtedness was in part evidenced by several promissory notes of Mues held by the bank amounting to $2,500, with some accrued interest.   In the complaint in this action it is alleged that at that time, with the view of preferring the defendant, Mues paid $2,500 to the bank in payment of such notes, and that the bank received the same and delivered up the notes.   This action is prosecuted to recover that amount of money because of such alleged preferential payment to the defendant, which, if made, was confessedly, under the circumstances, invalid under the insolvent law.   At the trial the plaintiff produced evidence going to show that Mues, owning a certain lot of land, agreed

with one of the officers of the bank (Lawton) that the latter might sell the lot for $2,500, and that the proceeds should be paid to the bank on such indebtedness; that Lawton procured a purchaser, one Marti, at that price, to whom Mues conveyed the land by deed; that Marti executed to the defendant bank his promissory note for the same amount, which the bank discounted and credited to him; that he gave to Mues his check on the same bank for the purchase price, $2,500, which Mues deposited to his own credit in this bank, and gave his own check to the bank for $2,529, and took up his notes to that amount. More briefly stated, this evidence may be deemed to have shown that Mues sold the land to Marti, received the price, and therewith paid his indebtedness to the bank to the extent before stated.

The defendant alleged that the transaction was of a different nature, it being an agreement carried into effect for a sale of the lot to the bank in satisfaction of the notes, the title being conveyed to and held by Marti in trust for the bank. The defendant also averred a tender by it of a reconveyance of the land from Marti to the plaintiff, and that it still held the deed of conveyance for delivery to the plaintiff. It is claimed that a restoration to the assignee of the specific property conveyed by the debtor to his creditor in payment of the debt would satisfy the requirements of the law.

Evidence was presented on the part of the defendant, which, however, the court refused to consider, going to show, by parol, that the agreement and intention of the parties to the transaction were substantially as alleged by the defendant; that it was really a purchase of the land by the bank from Mues in satisfaction of his notes, the title, however, being taken by Marti for the benefit of the bank, in order that other creditors might not discover the preference thus effected; that Marti acted in the matter merely for the benefit of the bank, it being agreed that the note given by him to the bank was not to be paid. The evidence also tended to show that when Mues gave his check to the bank, and took up his notes, he had no considerable amount standing to his credit, aside from the $2,500 check of Marti given at that time. The question is whether such evidence was admissible to vary the effect of the transaction evidenced by the

deed and other instruments referred to, and as to this we think that the appellant must be sustained.

There is no claim of fraud except such as is involved in the payment of a debt under circumstances which made such payment an unlawful preference of one creditor (the bank) over others. The insolvent owed the bank, and it is not shown that the property conveyed by him, and by means of which, as the offered evidence went to show, he paid his notes, exceeded in value the amount of the debt thus paid. It is only by force of the insolvent law of 1881 that the transaction was made subject to impeachment. Section 4 of that law declares that "conveyances and payments made, and securities given," under circumstances such as existed in this case, "shall be void, * * * and the assignee may, by action or other proper proceedings, have all such conveyances, payments, and preferences annulled and adjudged void, and *recover the property so conveyed*, or the value thereof, and recover the payment so made." It is obvious that in the case of a preferential conveyance of real or personal property by an insolvent debtor to a creditor in payment of the debt, contrary to the provisions of this law, a recovery by the assignee of the specific property thus conveyed is the proper remedy contemplated by this statute where the property can be so recovered, the right to recover "the value thereof" being given as an alternative remedy where the specific property is not recoverable. The language of the statute and the plain purpose of it—to recover the property improperly conveyed—lead to this conclusion. It provides for the *annulling* of such conveyances. Such conveyances are good as between the parties. They are only voidable by creditors, or by the assignee representing creditors, in case insolvency proceedings shall have been instituted within a specified time after the conveyance. If the assignee seeks to avoid the conveyance or transfer of property, the statute does not indicate that he has a right to *elect* whether he will take back the property, where that remedy is open to him, or refuse that and sue to recover its value. Hence the evidence should have been received if it was competent to thus prove by parol that, back of the forms and device adopted for the purpose of concealment, the transaction was

really a conveyance of the land to the bank in payment of the notes. Any evidence competent to prove the real nature of the transaction should have been received. Notwithstanding the forms or appearances under which Mues and the bank and Marti may have shrouded their dealings, the bank is not now estopped from showing what was really done; for neither the plaintiff, nor the creditors whom he represents, have so acted or relied upon such appearances as to enable them to invoke the principle of estoppel.

The respondent, denying the competency of the evidence referred to, states and relies upon propositions which although familiar, and in their general application unquestionable, are not applicable here. It is true that the conveyance to Marti made him the legal owner of the property, and that no valid trust is shown to have been created in favor of the bank. If he had chosen to keep the land, the bank could not have prevented his doing so. So, too, the bank might have sued Marti on his note, notwithstanding the oral agreement not to do so. But this is not a proceeding by the bank against Marti to have a trust declared or enforced, nor does the latter appear in this action as a party asserting his title or legal rights. The *parties* to the deed are not here contending as to its legal effect, nor is one of such parties seeking, as against the other, to show that their real agreement was different from that which the law declares to result from the written instruments by which they chose to express and carry into effect their intentions. Only as between the parties to an instrument and their privies is it conclusive and unimpeachable by parol evidence. *Van Eman* v. *Stanchfield,* 10 Minn. 255, (Gil. 197;) *Sanborn* v. *Sturtevant,* 17 Minn. 200, (Gil. 174;) *National Car & Locomotive Builder* v. *Cyclone Steam Snow-Plow Co.,* 49 Minn. 125, (51 N. W. Rep. 657;) *Buxton* v. *Beal,* 49 Minn. 230, (51 N. W. Rep. 918;) *Lee* v. *Adsit,* 37 N. Y. 78; 1 Greenl. Ev. (14th Ed.) 279. This contention is not between the parties to the deed. The defendant was not a party to the deed, and Marti, the grantee in the deed, is not here as a party asserting any rights under it. Hence, although it may appear by the evidence the admissibility of which is in question that the deed was made to Marti at the instance or with the consent of the bank, the latter is not concluded from showing the

real nature of the transaction. The evidence offered was such that it might have been found that the real intention of the parties, carried into practical effect, was a payment of the notes by a transfer of the land to Marti, he taking and holding the same for the benefit of the bank, a fictitious credit being given to Marti in the bank, in order that by his giving his check thereon in favor of Mues he might *appear* to have paid Mues the purchase price, Mues, in turn, checking the same funds back to the bank, no money having passed in the whole dealing. The fact that by the conveyance to Marti the bank did not really secure the land, or any enforceable legal right respecting it, does not necessarily forbid that the same effect be given to it, as respects the remedy to be granted in this action, as though the deed had been made directly to the bank. See *National Investment Co.* v. *Nordin, ante,* p. 336, (52 N. W. Rep. 899.) It seems that Marti has acted in the matter as though he were a trustee for the bank, and has placed a reconveyance of the land to the assignee in the possession of the bank to be disposed of by it.

Of course, if the circumstances had been such as to *estop* the bank from showing the truth of the matter, and from showing that the forms and appearances were fictitious, the case would have been different.

Our conclusion is that the evidence showing the real nature of the transaction was competent, and should have been received.

Order reversed.

(Opinion published 52 N. W. Rep. 967.)