(Opinion published 56 N. W. Rep. 896.)

---

ALFRED J. DEAN *vs.* FRED. E. GODDARD *et al.*

Argued Oct. 26, 1893.   Affirmed Nov. 17, 1893.

No. 8257.

**Title may be made by adverse possession which ended before suit commenced.**

In an action to determine the question of title by adverse possession, the period relied upon need not be the statutory one next before the time when the action is commenced.   If such title becomes complete it is not lost or forfeited by any subsequent interruption of the possession, unless by some other adverse possessor holding for such a length of time as would create title in himself.

**Title by adverse possession is title in fee simple.**

A title acquired by adverse possession is one in fee simple, and is as perfect a title as one by deed.   The legal effect of such title not only bars the remedy of the owner of the paper title, but divests his estate, and vests it in the party holding adversely for the required period of time, and is conclusive evidence of such title.   The title so acquired is predicated upon the presumption or proven fact that the prior owner has abandoned the premises.

**The holder of a title so acquired may bring suit to remove a cloud.**

If there is any cloud resting upon the title acquired by adverse possession, the owner of the premises has a legal right to apply to the court, and have his rights adjudicated, and have the cloud removed, and his title perfected by judgment record, if the evidence sustains his claim.

### Departure on the trial from the pleading.

Where the plaintiff inserts in his reply repugnant allegations, and the defendant does not move to have the pleading made certain and definite, nor move to compel the plaintiff to elect upon which of such allegations he will rely, but allows the plaintiff, without objection, to introduce parol evidence which shows one of the allegations to be indisputably true, the defendant will be estopped from claiming that the written pleadings should control the parol evidence so given.

### Possession when adverse to the holder of the paper title.

If permissive possession of land, with parol executory conditions attached, do not constitute adverse possession, as between the parties, yet it might be so as against third persons or strangers.

### Continuity of possession.

The continuity of adverse possession is not broken by the party in possession taking written conveyances of the premises from other parties claiming an interest therein, as this may give him color of title, and perhaps define the boundaries of the premises claimed.

### Possession when deemed hostile.

Where the trial court finds that the possession has been adverse for a period of twenty years, it is a substantial and sufficient finding that such possession has been hostile during that period of time, especially if all of the other ingredients necessary to constitute adverse possession are found by the court to exist.

### Actual residence on the premises not necessary to adverse possession.

The intent to claim by adverse possession may be inferred from the nature of the occupancy, and the possessory acts necessary to constitute adverse possession depend upon the character of the property, its location, and the purposes for which it is ordinarily fit or adapted. Actual residence upon the premises is not necessary, nor is it incumbent upon the adverse possessor to make oral declarations of his adverse claim. The mere fact that time may intervene between successive acts of occupancy, while the party is temporarily absent, engaged in business,—as in cutting logs to be sawed into lumber to be piled and stored on the premises by such party,—will not destroy his continuity of possession.

### The statute of limitation of actions based on public policy.

The highest considerations of public policy demand that our real property should be occupied and made productive, and the taxes promptly paid, to the end that all the governmental functions be maintained, the people protected in their just rights, and the country thereby made prosperous.

Same—a statute of repose.

The statutes upon the subject of adverse possession are properly called "statutes of repose," and are intended to prevent litigation, and to quiet the titles to land which has remained unoccupied by the actual owner for a long period of time. The statute, which the actual owner is presumed to know, is a continual warning to him; and if, through his negligence or selfishness, he allows others to occupy, use, and improve his land for a long period of time, he must be deemed to have acquiesced in the possession of his premises by his adversary.

Appeal by defendant, Fred E. Goddard, from an order of the District Court of Hennepin County, *Thomas Canty*, J., made December 3, 1892, denying his motion for a new trial.

The plaintiff, Alfred J. Dean, brought this action September 2, 1891, under 1878 G. S. ch. 75, § 2, to determine the adverse claims of Goddard and all other persons or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the opinion. Goddard alone answered. He claimed to have the title in fee derived from the United States. Plaintiff replied that neither Goddard his ancestor, predecessor or grantor was seized or possessed of the lot within fifteen years next before the commencement of the action. That Alfred H. Lindley owned the lot in 1866 and he and wife on August 28, 1866, conveyed it to William D. Washburn, that on or about June 1, 1866, Washburn entered into actual possession of the lot under such deed and he and his grantees have ever since and for more than fifteen years prior to the commencement of this action, been in actual, exclusive, open, hostile and adverse possession thereof, under claim and color of title and that plaintiff is the remote grantee of Washburn.

A jury was waived and the issues were tried before the Court on August 2, 1892. Plaintiff submitted evidence of the possession of the lot by himself and his grantors and read in evidence the several instruments under which such possession had been held and rested. The defendant Goddard then proved his paper title from the Federal Government down and rested. The Court found plaintiff to be sole owner in fee and in possession of the lot and that he and his grantors and predecessors in interest had been in open, continuous, exclusive and adverse possession thereof, with color of title and paying taxes thereon, for a period of twenty years and ordered judgment for plaintiff as prayed in his complaint.

The defendant moved the Court to amend its findings so as to show that Washburn's adverse possession commenced on or about August 28, 1866, the date of his deed from Lindley and wife and not prior thereto. This motion was denied. Defendant then moved for a new trial, but was denied and he appeals, claiming the evidence does not show actual, continuous hostile occupation of the lot by plaintiff and his grantors for an uninterrupted period of fifteen years at any time since Washburn obtained his deed from Lindley. The discussion here was upon this evidence, whether it sustained the finding of adverse possession.

*C. J. Cahaley* and *Little & Nunn*, for appellant.

*Woods & Kingman*, for respondent.

BUCK, J. The question raised in this case is whether the plaintiff has acquired title by adverse possession to the premises described in the complaint, viz. the front half of lots one (1) and two (2) in block sixty seven (67) in the city of Minneapolis.

The action was commenced in August, 1891. In his complaint the plaintiff alleges that he is in possession, and is the owner in fee simple, of the premises above described, and that the defendants claim some estate or interest in the premises adverse to the plaintiff, and prays that the claims of the respective parties be adjudged and determined, and that title to said premises be decreed to be in the plaintiff. The defendant Goddard answered, and alleged the title in fee to be in himself. The plaintiff replied, and such reply will be referred to hereafter. Plaintiff's contention is that he acquired title by possession held adversely for such a length of time as to create a title in himself.

Under 1878 G. S. ch. 66, § 4, the time limited for commencing actions for the recovery of real property was fixed at twenty years; but on April 24, 1889, the law was changed to fifteen years,—not to take effect, however, until January 1, 1891. The law, as amended, would be applicable to actions commenced after January 1, 1891, and prior to the time of the commencement of this action, in September, 1891; but this would not render the law existing prior to the amendment inapplicable to causes of action, when there was twenty years' adverse possession before the time when the change took effect. The period, however, relied upon, need not be the twenty

years immediately preceding the 1st day of January, 1891. It would be sufficient if the possession relied upon was continuous for twenty years up to any certain or definite time. Of course, the twenty years would have to be complete before the bringing of the action; but such twenty years need not, necessarily, be those next before the time when the action is commenced. In this case, if the inception of the plaintiff's adverse possession was in the months of June or August, 1866, and became perfect by continued adverse possession until the month of June or August, 1886, then the title thereby created would not be lost or forfeited by any subsequent interruption of the possession, unless by some other adverse possession for such a length of time as would create title in the possessor.

The court below found the allegations in the plaintiff's complaint to be true, and that he was, at the time of the commencement of this action, the sole owner, in fee, and in the lawful possession, of the premises described in the complaint, and that he and his grantors and predecessors in interest had been in the open, continuous, exclusive, and adverse possession of the premises, with color of title, and paying taxes thereon, for a period of twenty years, and that he was entitled to the decree and judgment of the court declaring him to be the absolute owner of the premises. We think a title acquired by adverse possession is a title in fee simple, and is as perfect as a title by deed. The legal effect not only bars the remedy of the owner of the paper title, but divests his estate, and vests it in the party holding adversely for the required period of time, and is conclusive evidence of such title. To say that the statutes upon this subject only bar the remedy, as some authorities do, is only to leave the fee in the owner of the paper title; thus leaving the owner with a title, but without a remedy. We think the better and more logical rule is to hold that the occupier of the premises by adverse possession acquires title by that possession, predicated upon the presumption or proven fact that the prior owner has abandoned the premises. Adverse possession ripens into a perfect title. This title the adverse possessor can transfer by conveyance, and when he does so he is conveying his own title, and not a piece of land where the title is in some other person, who is simply barred of any remedy from recovering it. See *Campbell* v. *Holt*, 115 U. S. 620, (6 Sup. Ct. Rep. 209;) *Baker* v. *Oakwood*, 123 N. Y.

16, (25 N. E. Rep. 312,) and cases there cited. Now, if there is any cloud resting upon such title, he has a legal right to apply to the court, and have his rights adjudicated, and the title perfected by judgment record, if the evidence sustains his claim. Considerations of public policy demand that this should be so, for the claim of title to lands can thus be found of record, instead of resting in parol, with all of its incidental dangers and trouble in establishing title.

Now let us consider the question raised by the defendant, as to whether one of the plaintiff's predecessors, Washburn, entered into the adverse possession of the premises June 1, 1866, or August 28, 1866. The plaintiff claims such entry was on the 1st day of June, and the defendant insists that the true date, if there was any such adverse entry at all, is shown by plaintiff himself, in his reply, to be August 28, 1866. The importance of these dates arises from the fact that there is evidence tending to show an adverse possession of the premises by the predecessors of plaintiff until the middle of July, 1886; and if the period of twenty years commenced June 1, 1866, of course, the expiration of that period would be June 1, 1886, and if the period commenced August 28, 1866, the twenty-year period would expire August 28, 1886. Thus, the true date becomes material. The plaintiff, in his amended reply, inserted the following allegation, viz.: "That on or about the 1st day of June, 1866, and more than fifteen years prior to the commencement of this action, said William D. Washburn, under the deed hereinbefore recited, executed to him by said Lindley, and claiming thereby to be the owner of said premises, entered into possession and actual occupation of the same." The deed referred to bears date August 28, 1866. It may be that there is sufficient undisputed evidence to show an adverse possession during this particular time, but we think that, under the circumstances, the parties are entitled to the opinion of this court upon this phase of the case. The fault of the defendant's position is this: That he allowed the plaintiff to introduce and prove beyond dispute, by parol evidence, without objection, that Washburn entered upon these premises June 1, 1866.

The rule, therefore, that the written allegations of the pleadings should control, does not apply. The defendant did not move to have the pleadings made certain and definite, nor to compel the

plaintiff to elect upon which of the dates he would rely as the time of Washburn's entry upon the premises, but remained silent, and allowed the date of June 1, 1866, to be undisputably proven by the plaintiff. The allegations in the reply were repugnant as to the dates of Washburn's entry, but the defendant, by his conduct, waived his right to insist now that the date of such entry should be determined as of August 28, 1866. He is estopped by the admitted parol evidence from insisting that the written pleadings should be construed in his favor, and against the plaintiff.

There is no dispute, however, that Washburn did procure a deed of the premises from Lindley dated August 28, 1866; and the defendant therefore contends that Washburn's entry, if adverse at all, should only be considered as having commenced on the date of the deed. To support this contention, he invokes the doctrine that one who enters upon land under a mere agreement to purchase does not hold adversely, as against his vendor, until his agreement has been fully performed, so that he has become entitled to a conveyance. This doctrine is not applicable to this case. Washburn's entry and holding was not under this defendant, nor any of his predecessors holding paper title. As we have already stated, it appears that he was in possession on the 1st day of June, 1866; and whether by permission of Lindley, or by his own voluntary entry, is immaterial, as to his rights against parties other than Lindley, and Lindley is not complaining, or questioning his rights, or time of entry. Nor is defendant claiming title under Lindley. If permissive possession, with parol executory conditions attached, would not constitute adverse possession as between the parties, yet it might constitute adverse possession as against third persons or strangers. Washburn's entry was adverse as against those under whom defendant claims by paper title. If, therefore, Washburn's entry, of June 1, 1866, was his own adverse act, and he so continued in possession of the premises until long after August 28, 1866, there is no need of considering the doctrine of tacking, or the necessity of the continuity of possession. Obtaining a deed to the premises from Lindley would not destroy Washburn's previous adverse possession, nor break its continuity. He had a right to strengthen his adverse claim to the premises, if possible, by as many written conveyances from other parties claiming any interest therein as he saw fit, and

thus give him color of title, and perhaps define the boundaries of the premises claimed by him.

The essential ingredients necessary to create title by adverse possession are now so well defined and understood that we shall not enter into any argument or discussion to show what they are. We merely state them in this connection that we may the more conveniently apply them to the undisputed facts in this case. "To be adverse, possession must be actual, open, continuous, hostile, exclusive, and accompanied by an intention to claim adversely." *Sherin* v. *Brackett,* 36 Minn. 152, (30 N. W. Rep. 551.)

This leads us to the question raised by defendant,—that the court below did not find, specifically, that plaintiff's possession, or the possession of his predecessors, was hostile. But it did find that such possession was open, continuous, exclusive, and adverse during the requisite period. The greater includes the less. If it was adverse, it was hostile. In Sedg. & W. Tr. Title Land, § 749, it is said that "it is tautology to say that adverse possession must be 'hostile.'" Such hostility may be manifested by acts of possession and use of the premises, plainly visible, actual, open, and continuous, such as appeared in this case, by using the premises for many years as a lumber yard, building a barn and shed thereon in 1866 or 1867, and keeping the same on the premises until they burned down, in March, 1884, and keeping a large number of horses on the premises and in the stables for many years. Also, storing machinery, lamp posts, castings, and other personal property, putting a large sign on the lot, with notice thereon that it was for rent, for a long term of years, were acts of hostility, as tending to show very strongly that some one was assuming dominion over the premises, and had intended to, or was usurping the possession.

If, as was said by the court in *Stephens* v. *Leach,* 19 Pa. St. 263, the adverse possessor "must keep his flag flying," yet it is no less essential that the actual owner should reasonably keep his own banner unfurled. The law, which he is presumed to know, is a continual warning to him that if he shall allow his lands to remain unoccupied, unused, unimproved, and uncultivated, he may by adverse possession for a long period of time, fixed by law, be disseised thereof, and be deemed to have acquiesced in the possession of his adversary. In this case, the actual owners by paper title have never

occupied the premises since the first owner obtained his title from the government, in 1855 or 1856. Considerations of public policy demand that our lands should not remain for long periods of time unused, unimproved, and unproductive. Taxes should be promptly paid. It nowhere appears that the owners by paper title have ever paid any taxes, but they have allowed the adverse occupants, during a period of many years, to pay nearly $5,000 taxes upon the premises. Payment of taxes shows claim of title. *Paine* v. *Hutchins*, 49 Vt. 314. We can readily understand how these statutes are called "statutes of repose." The burdens of government must be met; its educational interests provided for; its judicial, legislative, and executive functions maintained; and to do this our real property must be made productive, to the end, among other things, that taxes may be raised and paid from land not subject to continual litigation, but the titles thereto quieted. If the selfish, the indolent, and the negligent will not do this, there is no more merit in their claim than that of the adverse possessor, who does so, whatever may be said of the harshness of the statute of limitation. The settlement and improvement of the country, with its consequent prosperity, should be superior and paramount to the speculative rights of the land grabber, or selfish greed of those who seek large gains through the toil, labor, and improvements of others. The hostile possession of the adverse claimants in this case fully appears. The possession has been open, visible, hostile, and notorious, as appears from the evidence. It has been exclusive, for no one else has made any claim to it. Those who have been on the premises, other than plaintiff or his predecessors, have made no claim of right, but have paid rent to the adverse claimant, or were there simply as trespassers, which would not break the continuity of possession. The intent to claim may be inferred from the nature of the occupancy. Oral declarations are not necessary. Possessory acts, to constitute adverse possession, must necessarily depend upon the character of the property, its location, and the purposes for which it is ordinarily fitted or adapted. If a person should take possession of farm land, build a barn and shed thereon, and allow them to remain there for years, plow and cultivate the land and harvest the crops, pay taxes on the premises, and actually occupy them, for such a period of time, as is usually done by the actual owner of such farm land, with such open, no-

torious, visible, hostile, and exclusive acts as would destroy the actual or constructive possession of the true owner, if continued long enough, it would ripen into a complete title, although there might not be actual residence upon the premises by the adverse claimant or possessor. The acts necessary for such purpose might be different with a city lot. The question is to what purpose may it be ordinarily fit and adapted, and reasonably used. In a large manufacturing city, with vast lumber interest, the use of a lot for piling lumber thereon, and there storing it or keeping it for sale, might be the best use to which such lot could possibly be adapted. And, as part of such business, the building of a barn and shed thereon, for keeping and stabling horses used in procuring logs, as a part of such lumber business, would constitute a very strong ingredient of adverse possession.

The mere fact that time may intervene between successive acts of occupancy, while a party is engaged in such lumber business, as by taking his teams from such stable and shed, and using them in procuring logs to be sawed into lumber to be by him piled and stored upon such premises, does not necessarily destroy the continuity of possession. During such time, the lumber left upon the lot, the barn and shed there remaining, and various implements connected with such lumber business used upon the premises, would indicate that some one was exercising acts of dominion over the lot, even though the party was occasionally and temporarily absent upon the business for which he was using such lot.

We think the whole record herein presents such a state of facts that the court below was justified in its finding and decision. If there was error in admitting testimony showing that sand was removed from the premises after the commencement of this action, it certainly could not have prejudiced the defendant.

We find no prejudicial error, and the order of the court below, denying a motion for a new trial, is affirmed.