## GEO. RUPLEY v. JOHN G. FRASER AND OTHERS.[1]

February 18, 1916.

Nos. 19,608—(236).

**Adverse possession—definition of "hostile" possession.**

1. Possession of land to be adverse must be actual, open, continuous, hostile and exclusive. By "hostile" is meant that the possession must be with intent to claim and hold the land against the true owner and the whole world, but it is not necessary that the occupant enter under claim of ownership in fee.

**Same—where tract is traversed by streets used by the public.**

2. A person may be in adverse possession of land though it is traversed by public streets, and, while he cannot acquire by adverse user the rights of the public in the streets, he may by occupation of the whole tract acquire title to the portions not dedicated to public use, and he may also acquire title to the fee of the streets.

**Same—assignment of tax certificate construed.**

3. One in adverse possession may acquire a tax certificate on sale of the land for taxes, and may assign the same without breaking the continuity of his possession. An instrument of assignment, given in this case by one in adverse possession and in form a sale and transfer of all his interest in the land, is *held* not to break the continuity of adverse possession: First, because it was not delivered until after title by adverse possession matured; and, second, because intended only as an assignment of the tax lien. Although the instrument was in writing, still, in litigation between one party to the instrument and strangers, the real nature of the transaction may be shown by parol evidence.

**Taxation—forfeiture to state no interruption to adverse possession.**

4. There is no real forfeiture to the state for taxes in this state, and what is sometimes called forfeiture to the state upon the expiration of three years from date of sale to the state does not interrupt adverse possession.

[1] Reported in 156 N. W. 350.

Note.—On question of hostility as essential element in adverse possession, see note in 15 L.R.A. (N.S.) 1192.

Action in the district court for Itasca county to determine adverse claims to certain vacant and unoccupied land and to restrain defendants from asserting or enforcing any claim to any right, title, estate, lien or interest therein adverse to plaintiff. The separate answer of defendant Fraser alleged the land was in the possession of defendant John G. Fraser and alleged that for more than 15 years prior to the beginning of the action he had been in adverse, uninterrupted, continuous, hostile, open, actual and exclusive possession of the same under claim of right thereto, and during that time had paid taxes thereon. The case was tried before Stanton, J., and a jury which returned an affirmative answer to the question whether the defendant John G. Fraser for more than 15 years prior to the commencement of the action had been in the adverse, uninterrupted, continuous, hostile, open, actual and exclusive possession of the land under claim of right thereto, and found the value of the improvements placed thereon by defendant to be $127.51. From an order denying his motion for judgment notwithstanding the verdict on the issue of adverse possession or for a new trial, plaintiff appealed. Affirmed.

*Ralph A. Stone,* for appellant.

*Thwing & Rossman,* for respondents.

HALLAM, J.

Plaintiff has the record title to a tract of platted land in the village of Laprairie. Defendant John G. Fraser claims title by adverse possession. The jury found in his favor. Plaintiff appeals.

In 1897 this land was "common." In July of that year defendant John G. Fraser took possession of it; inclosed it with an adjoining tract of his own by a fence of posts and wire; used it as a pasture for stock, and, save for a little shifting of fences, he continued to so occupy it without interruption for more than 15 years. In the meantime he paid the taxes thereon, except that in some cases he purchased tax certificates at tax sales. There is little question as to the sufficiency of his title by adverse possession, unless it is to be defeated by some one or more of the facts which we will now consider.

1. This defendant, on cross-examination, said that in the earlier years of his occupation he did not claim title in fee. It is contended that he therefore could not acquire title by adverse possession. This is not the

law.  Possession to be adverse must be "actual, open, continuous, hostile, exclusive and accompanied by an intention to claim adversely." Sherin v. Brackett, 36 Minn. 152, 30 N. W. 551; Dean v. Goddard, 55 Minn. 290, 297, 56 N. W. 1060. By "hostile" is meant that possession must be with intent to claim and hold the land as against the true owner and against the whole world, Mattson v. Warner, 115 Minn. 520, 521, 132 N. W. 1127; but it does not mean that the occupant must upon entry claim ownership in fee. Any such rule would defeat most claims of adverse possession.

Adverse possession may originate in naked, wilful trespass. It usually does. The original entry may be tortious and without any pretense of rightful claim, but with a plain purpose to usurp title and possession. It is not necessary that the disseisor should believe or assert that he has a right to enter. Mattson v. Warner, 115 Minn. 520, 522, 132 N. W. 1127. Good faith is not an element required. The terms "claim of title," "claim of right," or "claim of ownership," frequently found in the books in this connection, mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others. Carpenter v. Coles, 75 Minn. 9, 77 N. W. 424; Cool v. Kelly, 78 Minn. 102, 80 N. W. 861; Mattson v. Warner, 115 Minn. 520, 132 N. W. 1127. The statute of limitations is distinctly a statute of repose. It was framed, not out of consideration for the disseisor, but in furtherance of a public policy which deems it important that lands should not remain for long periods of time unused, unimproved, unproductive and with no one discharging the public duty of paying taxes thereon. The statute prefers an interloper who will utilize the land and assume the burdens of ownership, to the true owner who abandons his land and its burdens. Dean v. Goddard, 55 Minn. 290, 56 N. W. 1060.

2. Section 7695, G. S. 1913, provides that "no occupant of a public way * * * shall acquire, by reason of his occupancy, any title thereto." It is contended that by reason of this statute land traversed by dedicated streets cannot be acquired by adverse possession without separate occupation of the separate lots or blocks. We do not agree with this contention. Possession may be actual, open, continuous, hostile and exclusive, even though part of the land may be a public street. Howison v. Masson, 29 App. Cas. (D. C.) 338. The fact that this part of the land may not

be subject to disseisin does not change the character of the possession, nor does it diminish the right of the occupant in relation to that part of the land which is subject to disseisin. A man may admit the right of public easement or hold without hostility to such right, and yet hold adversely. Maas v. Burdetzke, 93 Minn. 295, 101 N. W. 182, 106 Am. St. 436. Under our laws the abutting owner owns the fee in the adjacent street. We see no reason why the rights of the fee owner may not be acquired by adverse possession, though the rights of the public may not be. Cady v. Fitzsimmons, 50 Conn. 209, Woodruff v. Paddock, 130 N. Y. 618, 29 N. E. 1021; Lambert v. Huber, 22 Misc. 462, 50 N. Y. Supp. 793; Flick's Estate, 6 Kulp. (Pa.) 329; Cocke v. Texas & N. O. R. Co. 46 Tex. Civ. App. 363, 103 S. W. 407.

3. Defendant John G. Fraser, instead of paying all the taxes on this land, permitted the land to be sold for taxes for the year 1905, and purchased the land himself at the tax sale. On January 3, 1912, and within a few months of the time when his adverse possession would ripen into a title, he went to the county auditor to consult him with reference to perfecting a tax title upon this land.

Fraser might have perfected a tax title in his own name without in the least prejudicing his rights acquired by adverse possession. Cool v. Kelly, 78 Minn. 102, 105, 80 N. W. 861; Hays v. Martin, 45 Cal. 559; Liebheit v. Enright, 77 Kan. 321, 94 Pac. 203; Sands v. Davis, 40 Mich. 14; Burton v. Snow, 165 Mich. 530, 130 N. W. 1116; Mather v. Walsh, 107 Mo. 121, 17 S. W. 755; Griffith v. Smith, 27 Neb. 47, 42 N. W. 749; Monnot v. Murphy, 207 N. Y. 240, 100 N. E. 742; 1 Cyc. 1016 (75).

The county auditor, however, advised him that he had better assign the certificate to another. Following this advice, he filled out and signed a form of assignment on the back of the certificate. The assignment reads as follows:

"For and in consideration of the sum of Two Dollars, to me in hand paid, the receipt of which is hereby acknowledged, I, John G. Fraser, do hereby sell, transfer and assign to Donald Fraser all my right, claim and interest in and to the annexed Certificate No. 129 and the land therein described."

Later he procured from the county auditor a notice of expiration of redemption and undertook to perfect a tax title. The tax title was not valid, for reasons not necessary to state here.

No particular claim is made that an assignment of the tax lien would militate against the rights of Fraser. The claim is that the assignment was in fact a quit-claim deed and that the giving a deed of the land by John G. Fraser to Donald Fraser broke the continuity of his adverse possession and defeated his title.

We see two reasons why this contention cannot be sustained.

The first is that there was not within the 15 years any delivery of this document to Donald Fraser. Donald Fraser was John G. Fraser's son. At the time the document was signed Donald Fraser was not present, had never been consulted, and knew nothing of the transaction. The certificate with the indorsement thereon was retained by John G. Fraser. Some time later it was recorded, but this was after the completion of the 15 year period. Clearly as long as John G. Fraser held possession of this instrument, defendant Donald Fraser could not have claimed any right under it either as to title or possession.

The second is that the evidence shows that the sole purpose and intent of this document was to assign the tax certificate, and to assign that to be held in trust for the assignor. If the document was in fact an absolute deed, then it did not conform to the actual purpose or intent of the parties. Although the document was in writing, the real nature of the transaction may be shown by parol. The statute of frauds has no application to such a case. Only as between the parties to an instrument and their privies is a written contract conclusive and unimpeachable by parol evidence. In litigation between one party to the instrument and strangers to it extrinsic evidence may be be received to show what the agreement of the parties to the instrument really was. Van Eman v. Stanchfield, 10 Minn. 197 (255); Sanborn v. Sturtevant, 17 Minn. 174 (200); Buxton v. Beal, 49 Minn. 230, 51 N. W. 918; Clerihew v. West Side Bank, 50 Minn. 538, 52 N. W. 967; Horn v. Hansen, 56 Minn. 43, 57 N. W. 315, 22 L.R.A. 617; Pfeifer v. National Live Stock Ins. Co. 62 Minn. 536, 64 N. W. 1018; 17 Cyc. 750, 1 Greenleaf Ev. (16th ed.) § 279.

It follows that parol evidence was properly received to show the real transaction, and the objections of plaintiff to such testimony were properly overruled.

4. There is no force to the contention that the possession of John G. Fraser was interrupted by the "forfeiture" of the land to the state for taxes. Though we use the term "forfeited to the state" upon expiration of three years from the date of sale to the state, it is well understood that there is no forfeiture of title in fact. The owner still has title and a right to redeem, until there has been a sale by the state to a private person and notice of expiration of redemption given and the time fixed by statute thereafter has expired. Until such time neither the state nor the purchaser therefrom has more than a lien. Cole v. Lamm, 81 Minn. 463, 84 N. W. 329; Minnesota Debenture Co. v. Scott, 106 Minn. 32, 119 N. W. 391.

Order affirmed.