HERMAN OLDIG v JOHN L. FISK.

FILED DECEMBER 21, 1897.   No. 7631.

1. Ejectment: ADVERSE POSSESSION: PLEADING: EVIDENCE. In ejectment evidence to prove adverse possession is admissible under a general denial of plaintiff's title.

2. ———: ———: EVIDENCE. The purchase or attempted purchase of an outstanding title by one in adverse possession, and before the expiration of the statutory period, is not alone sufficient to break the continuity of possession or divest it of its adverse character, although the occupant may believe that he is thereby acquiring the true title. RAGAN, C., dissenting.

3. ———: ———: ———. One who claims under a tax deed or by adverse possession does not, by causing to be recorded the patent from the United States to another, acknowledge title paramount in that other.

ERROR from the district court of Douglas county. Tried below before AMBROSE, J. *Reversed.*

C. *Hollenbeck* and *Frick & Dolezal,* for plaintiff in error.

N. H. *Tunnicliff* and *Elmer E. Thomas, contra.*

IRVINE, C.

This action was ejectment by Fisk against Oldig for eighty acres of land in Douglas county. At the close of the evidence, by agreement of the parties, the jury was discharged and the cause submitted to the court, which entered judgment for the plaintiff on special findings of fact. With regard to the point chiefly controverted these findings are as strongly in favor of the defendant in error as the evidence warrants, and we accept them as affording a proper basis for the examination of the case. From them it appears that in 1857 the land in controversy was pre-empted by Fisk, and a patent was thereafter issued to him. In 1871 Wilson Reynolds obtained a tax deed to the land and thereafter received other tax deeds. Oldig claims under Reynolds. Possession was taken under the tax deeds and the court found that the defendant, Oldig, and his grantors had held adverse possession for more than ten years prior to the beginning of the action, except for the fact that in 1889, and before the bar of the statute had become complete, Reynolds, being then in possession, employed a man named Price to search for the patentee and purchase

from him; that Price produced a deed purporting to be executed by Fisk, and Reynolds paid Price $900 therefor. In so doing Price believed that he was dealing with Fisk and acquiring his title to the premises. While it is not so specially found, it was clearly proved that the deed obtained by Price was a forgery.

Defendant in error contends that the defense of adverse possession was not open to the plaintiff in error, for want of a sufficient plea. We shall not examine into the sufficiency of the special plea interposed, because we think that evidence of adverse possession was admissible under the general denial of Fisk's title. True, the statute of limitations, as a general rule, must be pleaded to be made available, but there are two reasons why that rule is not applicable to the defense of adverse possession in an action of ejectment. The first is that sections 626 and 627 of the Code provide specially for the pleadings in actions of ejectment, and as to the answer it is enacted that it shall be sufficient to deny generally the title alleged in the petition. Under such a denial it has always been here held that the defendant may show any facts negativing the plaintiff's right of possession. (*Franklin v. Kelley*, 2 Neb. 79; *Dale v. Hunneman*, 12 Neb. 221; *Staley v. Housel*, 35 Neb. 160; *Wanser v. Lucas*, 44 Neb. 759.) The other reason is that adverse possession is more than a defense of the statute of limitations. Such possession, for the statutory period, not only bars the remedy, but it vests in the occupant an absolute title to the land. In support of that rule we have a long and unbroken line of decisions, beginning at least as early as *Gatling v. Lane*, 17 Neb. 77, and extending down to *Fink v. Dawson*, 52 Neb. 647. Proof of adverse possession goes therefore directly to disprove plaintiff's title, and is admissible under the general issue. (*Fink v. Dawson, supra; Hogan v. Kurtz*, 94 U. S. 773; *Kyser v. Cannon*, 29 O. St. 359; *Donahue v. Thompson*, 60 Wis. 500; *Miller v. Beck*, 68 Mich. 76; *Stocker v. Green*, 94 Mo. 280; *Trowbridge v. Royce*, 1 Root [Conn.] 50; *Wade v. Doyle*, 17 Fla.

522.)   What has been said is not opposed to the case of
*Alexander v. Meyers,* 33 Neb. 773, which was a suit to fore-
close a lien and, therefore, did not present a similar
question.

The record then presents, and succinctly presents, the
question whether an attempt by one in the adverse pos-
session of land, and before the statutory period has ex-
pired, to purchase from the true owner, operates to divest
his possession of its adverse character.   Title by adverse
possession is acquired by ten years' open, continuous,
exclusive occupancy under claim of ownership.   What-
ever may be the law elsewhere, here that claim need not
be well founded in law or in fact, it need not be under a
*bona fide* belief that it is well founded, it need not even be
under color of title.   (*Omaha & Florence Land & Trust Co.
v. Hansen,* 32 Neb. 449; *Lantry v. Wolff,* 49 Neb. 374;
*Gatling v. Lane,* 17 Neb. 80.)   Accordingly it has been
held that one in adverse possession does not impair his
right to rely upon the statute, by purchasing the land at
tax sale and taking and recording a tax deed, and that
such acts do not create a break in the running of the
statute.   (*Griffith v. Smith,* 27 Neb. 47.)   This rule was
followed in *Omaha & Florence Loan & Trust Co. v. Hansen,
supra,* the court saying: "Neither does the purchase of a
tax deed break the continuity of possession.   (*Griffith v.
Smith,* 27 Neb. 47.)   Cases may be found which hold that
the purchase of such title breaks the continuity.   We
cannot agree, however, that such is the case.   A party
in possession of land as owner certainly has a right to
protect that possession by the purchase of any outstand-
ing claim or lien against the property.   There is not
thereby any break in the possession, nor does the ad-
verse occupant rely upon his purchased title in prefer-
ence to the one which he previously possessed.   He joins
the two together and possesses whatever title both may
give him."   These decisions logically, if they do not in
direct terms, control the present case.   They have stood
unquestioned for some years and may justly be regarded

as founding a rule of property. They certainly should not be departed from in the absence of the most convincing reason, or controlling necessity.

Rather than there being such reason, we think that principle and precedent both favor the rule expressed in the cases cited. While there is some conflict of authority it is to be observed that the cases holding that the benefit of the statute is lost by the purchase or attempted purchase of an outstanding title, are uniformly based on the rule that any act recognizing a superior title in another, at least before the bar of the statute has become complete, defeats its operation. This court has several times enforced that rule, as in *Hull v. Chicago, B. & Q. R. Co.*, 21 Neb. 371, where a railroad company sought the benefit of the statute after having, while in possession, but within ten years, instituted condemnation proceedings against the true owner, thus by a solemn admission of record acknowledging his title. In *Roggencamp v. Converse*, 15 Neb. 105, the occupant, claiming the protection of the statute, had taken a lease from the true owner and thereby not only recognized his title but estopped himself from denying it. The general rule cannot be doubted. The error is not in declaring that rule, but in applying it to the facts before us. A vendee is not estopped to deny his vendor's title. In the purchase of an outstanding title there is nothing inconsistent with the former claim of ownership. It is generally conceded that one may purchase an outstanding title to "buy one's peace" or prevent threatened litigation. There is no room to distinguish in this behalf, between litigation threatened by word of mouth, and litigation threatened by the fact that the title is outstanding,—a constant menace from the very fact of its existence. As in adverse possession the motive of the occupant is immaterial, and the claim of ownership need have no legal foundation, there is no reason why one may not at any time buy in an outstanding title and protect oneself against the probability of disastrous litigation. The

fact that one believes the outstanding title to be superior so long as he does not yield thereto cannot affect the question, because the character of one's possession depends upon the fact of a claim of ownership and not its real or supposed validity. In buying what is outstanding there is nothing partaking of the nature of an acknowledgment of the superiority of that title or an abandonment of one's former claim. The old title is not conveyed away or lost. Such an act admits, and admits only, that the occupant deems it worth while to get rid of the outstanding title and unite it to the one under which he has been holding. It does not prove, and alone it does not even tend to prove, a change in the character of the possession or a recognition of a title paramount. In support of these views are the following cases, many of them being cases where the outstanding title was bought while the statute was running, and none recognizing any distinction between that case and one of a purchase after the expiration of the statutory period: *Jackson v. Newton*, 18 Johns. [N. Y.] 355; *Northrop v. Wright*, 7 Hill [N. Y.] 476; *Chapin v. Hunt*, 40 Mich. 595; *Mather v. Walsh*, 107 Mo. 121; *Dean v. Goddard*, 55 Minn. 290; *Clark v. Peckenpaugh*, 46 Ill. 11; *Elder v. McClaskey*, 70 Fed. Rep. 529; *Jackson v. Given*, 8 Johns. [N. Y.] 137*; *Cannon v. Stockmon*, 36 Cal. 535; *Hayes v. Martin*, 45 Cal. 559; *Singer Mfg. Co. v. Tillman*, 21 Pac. Rep. [Ariz.] 818; *Johnstone v. Scott*, 11 Mich. 232; *Headrick v. Fritts*, 93 Tenn. 270; *O'Neal v. Boone*, 53 Ill. 35; *Owens v. Meyers*, 20 Pa. St. 134.

It appears that while the patent was issued to Fisk in due season after his pre-emption, he did not receive it from the land office, and that Reynolds, in 1890, obtained it from the land office and caused it to be recorded. It is claimed that this was a recognition of Fisk's title, or at least that it is evidence tending to show such recognition. It must be remembered that Reynolds entered under a tax deed and that his claim of title was based thereon. In order, then, to lay a foundation for such a

15

claim, Reynolds must show that the land was subject to taxation, and this must be by showing that the legal or equitable title had passed out of the United States. Furthermore, in order to found a claim of title by adverse possession, it was necessary to show title out of the United States. The recording of the patent was consequently an act going as much to support the original claim of title, as in support of that supposed to have been derived from Fisk.

REVERSED AND REMANDED.

RAGAN, C., dissenting.

The general rule is said to be that any act of recognition or acknowledgment of a superior title in another, during the period of adverse possession, will amount to an interruption of the continuity of possession, and defeat the operation of the statute. (See the rule stated and the authorities collated in 1 Am. & Eng. Ency. Law [2d ed.] p. 838.) The precise question here then is, what act, or what conduct on the part of an adverse occupant, is such a recognition or acknowledgment of the paramount title as will stop the running of the statute of limitations in favor of such adverse occupant? In the case at bar, the evidence shows conclusively that Reynolds, while holding the real estate adversely before the statute had run so as to complete his title, voluntarily offered and attempted to purchase the paramount title to this real estate from Fisk, the owner thereof. The authorities hold that such conduct on the part of an adverse holder is evidence which will support a finding that at that time the occupant, then at least, was not occupying adversely to the holder of the paramount title. See *Lovell v. Frost*, 44 Cal. 471, where it was distinctly held: "If a party in possession of land offers to purchase it from the true owner, and this offer is made, not merely to buy an outstanding or adverse claim in order to quiet his possession or protect himself from litigation, the offer is a recognition of the owner's title, and will stop

the running of the statute." To the same effect see *Litchfield v. Sewall*, 66 N. W. Rep. [Ia.] 104, and cases there cited, in which it is said: "It seems to be well settled that an offer by defendant to purchase the property, which he is holding adversely from the plaintiff, within the statutory time, is a clear recognition of plaintiff's title, and will interrupt the running of the statute."

At the time Reynolds made this attempt to purchase Fisk's title, the statute had not so run as to perfect his own title to the real estate by the adverse occupancy thereof. Clearly, then, Reynolds was not trying to buy an outstanding or adverse claim existing against this **real** estate in order to quiet his possession to the same or protect him from threatened litigation in reference thereto. He believed, if he did not know, that the paramount legal paper title was in Fisk, and he desired to acquire it so as to vest in his grantee, Oldig, a perfect title to the real estate. The fact that, after receiving and recording the forged deed, he procured the patent issued by the United States to Fisk from the land office and caused it to be spread upon the records is another circumstance which tends at least to show that, at that time and from that time, he was not occupying adversely to the Fisk title but in subordination thereto. The district court concluded from Reynolds' conduct in attempting to purchase the real estate from Fisk that from that time forth he did not claim title to the real estate as against Fisk, nor hold possession nor occupy the same adversely to him, and we think the evidence sustains this conclusion. The judgment of the district court should be affirmed.