RIPLEY *v.* MILLER.

1. VENDOR AND PURCHASER—FORECLOSURE OF LAND CONTRACT—
ADVERSE POSSESSION.

Equitable considerations do not demand the granting of relief,
in a suit to foreclose a land contract which was made 17 years
before the institution of suit, and on which no subsequent
payments were made, the vendee having conveyed the land
through several successors in title to the defendant, who
knew nothing of the original unrecorded land contract, and
who with her grantors maintained continuous and hostile
possession for the statutory period, and made valuable im-
provements on the premises.

2. SAME—ADVERSE POSSESSION—HOSTILE NATURE.

The vendee in the land contract in actual possession under a
tax deed from the State was entitled to purchase the out-
standing claim of the vendor without impairing his own
rights or acknowledging the validity of the title bought.

3. SAME.

And the vendor was bound to take notice that the vendee was
in possession under the adverse claim.

4. ADVERSE POSSESSION—COLOR OF TITLE—WAIVER.

Adverse possession is not broken by negotiating with other
claimants if there is no waiver or nonclaim on the claimant's
part.

Appeal from Muskegon; Sessions, J. Submitted Feb-
ruary 10, 1911. (Docket No. 56.) Decided March 13,
1911.

Bill by William J. Ripley, trustee, against Clara Mil-
ler, Horace Brown, and Otto Meeske to foreclose a land
contract. From a decree for complainant, defendant
Miller appeals. Reversed.

*John A. McLaughlin* (*Cross, Vanderwerp, Foote &
Ross*, of counsel), for complainant.

*R. J. Macdonald* (*Philip W. Kniskern*, of counsel),
for defendant Miller.

STONE, J. This is a bill filed to foreclose a vendor's lien upon certain lands in Muskegon county under a land contract. The bill of complaint sets forth that complainant's predecessor in trust was the owner of the land in question; that, on December 30, 1889, he entered into a contract with one Theodore Johnson to sell and convey to him the land; and that Johnson agreed to purchase the same for the sum of $320, $50 of which was paid down, and the remainder was to be paid in three equal payments, with interest at 7 per cent. It is pertinent that we allude more specifically to certain allegations of the bill.

Paragraph 1 of said bill states that the former trustee, John R. Wilson, during his lifetime, had title in fee simple to the said premises, consisting of 40 acres on section 16 in township 10 north, range 17 west. After alleging the making of the contract and setting forth its provisions, the bill proceeds to state, in paragraph 5, as follows:

"That while said Johnson held said land under said contract as aforesaid he sold and assigned his interest therein, and in said contract, to Amelia Miller, of Muskegon, Michigan, by quitclaim deed bearing date September 3, A. D. 1895, which deed appears of record in the office of the register of deeds for said county of Muskegon, March 30, A. D. 1898, in Liber 96 of Deeds, at page 468; that said Amelia Miller conveyed and assigned the interest which she had acquired in said land and in said contract to her husband, Frederick W. Miller, of Muskegon, Michigan, by warranty deed, dated March 30, A. D. 1900, and recorded in said register's office April 26, A. D. 1904, in Liber 118 of Deeds, at page 619; that the said Frederick W. Miller conveyed and assigned his interest in said land and in said contract to Frank A. Anderson, by quitclaim deed dated April 7, A. D. 1900, and recorded in said register's office April 19, A. D. 1900, in Liber 102 of Deeds, at page 495; that said Frank A. Anderson conveyed and assigned the interest which he had thereby acquired in said land and in said contract to Clara Miller, by quitclaim deed, duly executed, bearing date May 5, A. D. 1900, and recorded in said registry April 26, A. D. 1904, in Liber 120 of Deeds, at page 34."

The answer of the defendant Clara Miller, she being the only defendant who answered, does not specifically deny in terms that complainant's predecessor had title to said premises in fee simple. The answer is inartificially drawn. It does allege, however, in the first paragraph of the answer, that said defendant is the owner in fee simple of the lands described in said bill of complaint as purchaser thereof from Theodore Johnson, the owner thereof, by quitclaim deed conveying to Amelia Miller, on September 3, 1895, said premises. It then proceeds to state in the second paragraph that Theodore Johnson became the owner of the lands in the month of March, 1889, from Charles Williams and wife, by quitclaim deed, which was duly recorded on the 23d of March, 1889; that the title of the said Charles Williams consisted of an auditor general's deed, bearing date the 17th of January, 1889, which was duly recorded on the 23d of March, 1889. In the fourth paragraph thereof the answer states as follows:

"That this defendant became the owner of the fee simple of the said lands as recited in paragraph 5 of the bill of complaint in this cause."

The answer then states that the defendant Clara Miller, and the other owners of the said lands and premises under the conveyance from the auditor general of the State of Michigan, paid the full value and consideration for the said land, entered into possession of the same, improved it, and paid the taxes thereon assessed by the authority of law; that the first time the said defendant Clara Miller ever heard or learned of the pretended contract sought to be foreclosed in this cause, was about two years before the filing of the bill, when complainant applied to her to pay the same; that the said land contract has never been recorded, and that she had no knowledge of its existence other than as above stated; that the several owners of the said lands, including the owner through whom the said defendant derives her title, had been in possession of said lands, improved the same, and were all without knowl-

edge of the pretended land contract of the complainant; and that said defendant has been in possession since she purchased the same, and has made valuable improvements thereon.

It is the claim of complainant that, in and by her answer, the said defendant, by admitting that she became the owner as recited in the fifth paragraph of the bill, has admitted that she had knowledge of the land contract, and that she and her grantors purchased under the land contract. In view of the other allegations of the answer, and of the testimony at the hearing, we doubt if it would be just for us to apply so strict a rule of interpretation to this answer. While it is carelessly drawn in the instance noted, yet the answer proceeds to state entire ignorance of the land contract at the time of the different purchases stated.

The undisputed evidence in the cause shows that Johnson went into possession of this 40 acres of land at the time he purchased it from Williams in March, 1889; that he commenced to improve the same and remained in possession over six years, when he sold it to Amelia Miller on September 3, 1895; that he was in possession under said tax deed by his purchase from Williams at the time he entered into the contract with the complainant's predecessor trustee on December 30, 1889; that from the time he took possession down to the time of the filing of this bill there had been continuous possession and occupancy of the premises by the different parties named in these deeds. There is no evidence of any demand made, either upon Johnson or any of his grantees, for payment of the moneys remaining unpaid on the land contract down to about two years prior to the filing of the bill, when demand seems to have been made upon the defendant Miller. There had been continuous occupancy and possession of these premises by the defendant Miller and her immediate grantors for nearly 17 years prior to the filing of the bill of complaint in this cause. Here, again, the language of the answer is open to criticism, as to the nature and character of this posses-

sion, as to whether the same was adverse or otherwise; yet the testimony tends to show that such possession was continuous and hostile to any claim of the complainant or his predecessor in trust. Johnson had been in possession under his tax deed over six years when he sold to Amelia Miller.

It seemed to be the view of the circuit judge that the purchase under the land contract was the recognition of a superior title on the part of Johnson, and that this is binding upon the defendant. The evidence is undisputed that at the time Johnson sold and conveyed the premises to Amelia Miller he did not disclose to her, or to her agent, any information or knowledge of the land contract, but he gave the parties to understand that he claimed under the Williams deed. The circuit judge, upon the hearing, entered a decree for the complainant for the full amount remaining unpaid under the land contract, and ordered a foreclosure sale of the premises to satisfy the amount due under the decree. Defendants have appealed.

It is significant here that Johnson was in possession of the premises, claiming to own the same, at the time he entered into the land contract, and that the land contract did not expressly give him the right of possession. The doctrine is well established that one in possession of land, claiming to own it, may buy in outstanding claims of title without abandoning or impairing his own, or acknowledging the validity of the title bought.

In *Donahue* v. *Klassner*, 22 Mich. 252, it was held that a vendee in a contract for the purchase of land of which he was already in possession, under an adverse title, is not estopped by his contract, in the absence of any special covenant standing as a sufficient foundation for it, to deny the title of the vendor. The complainant's predecessor was bound to take notice that Johnson was in possession under a tax deed, claiming adversely, when the land contract was made. That tax deed is not shown to be invalid.

In volume 1, Am. & Eng. Enc. Law (2d Ed.), at page 839, the doctrine is stated in this language:

"Neither the purchase nor the attempt to purchase outstanding claims or an ostensible title on the part of one in the adverse possession of the property will necessarily amount to a waiver or nonclaim on his part, or interrupt the adverse holding."

Many cases are cited in the note, including *Johnstone* v. *Scott*, 11 Mich. 246; *Chapin* v. *Hunt*, 40 Mich. 595. These cases, with many others that might be cited in other States, are to the effect that one in possession of land, claiming it as his own under color of title, may take a deed from a hostile claimant for the mere purpose of quieting the title without abandoning the character of an adverse possessor. A very well considered case upon this subject is that of *Meyer* v. *Hope*, 101 Wis. 123 (77 N. W. 720), where many of the authorities are reviewed and referred to, including the Michigan cases above cited. To the same effect is *Oldig* v. *Fisk*, 53 Neb. 156 (73 N. W. 661).

In 1 Cyc. p. 1016, occurs this language:

"With the exception of at least one decision, in which it has been broadly ruled that the purchase of an outstanding title or interest by the adverse claimant interrupts the continuity of his possession, it seems to be very generally conceded that an adverse occupant may purchase an outstanding title without thereby interrupting the continuity of his possession. A party, it is said, may very well deny the validity of an adverse claim of title, and yet choose to buy his peace at a smaller price than be at great expense and annoyance in litigating it"— citing many cases, including the two Michigan cases above referred to.

See, also, *Elder* v. *McClaskey*, 70 Fed. 529–547 (17 C. C. A. 251).

Adverse possession is not broken by negotiating with other claimants, if there is no waiver or nonclaim on the occupant's part. The tax deed is not before us. We must presume that it was color of title. It will be noted

that Johnson is not made a party defendant to this suit. The complainant is attempting to pursue his alleged lien upon the premises.

It was urged at the oral argument before us, on the part of the appellant, that the bill having alleged that the said land contract was forfeited, and had been so declared, complainant should be left to his remedy at law, and has no right to attempt to now affirm the contract and collect the amount unpaid thereon; that the claim of the complainant is the collection of the ordinary money debt secured by the contract (see *Walker* v. *Casgrain*, 101 Mich. 604–608 [60 N. W. 291]), and that his position is inconsistent with the claimed notice of forfeiture. We gather from the record that this point was not urged by defendant in the court below, and we are not disposed to consider it here. We think, however, notwithstanding the nature of the conveyances noted, that from this record it appears that the defendant Miller may well claim that she and her grantors have been in adverse possession of these premises for the statutory period. The defendant Miller being in possession, claiming to hold the premises adversely, and having been permitted to make valuable improvements in good faith thereon, we are of opinion that complainant in his bill does not present a case for equitable relief; that he does not show that he has any title to, or interest in, said lands.

The case will therefore be reversed, and the bill dismissed. Defendant Miller should recover her costs to be taxed.

OSTRANDER, C. J., and BIRD, BROOKE, and BLAIR, JJ., concurred.