**DICKENS v. DICKENS et al.**

No. 4995.

Court of Civil Appeals of Texas.

El Paso.

Oct. 14, 1953.

Rehearing Denied Nov. 25, 1953.

Crenshaw & Griffith, Lubbock, Pitts & Liles, Conroe, for appellant.

Benson & Howard, Lubbock, for appellees.

McGILL, Justice.

This is an action in trespass to try title, brought by appellant as plaintiff against appellees and others as defendants, to recover an undivided one-half interest in the east one-half of Section 8, Block 31–C, Public School Lands, Gaines County, containing 320 acres. She also sought to recover certain alleged damages and an accounting as to certain oil and gas alleged to have been removed from the property by appellees. Trial was to a jury, and on their answers to special issues the court rendered judgment that plaintiff take nothing.

This is the second appeal in this case. This court's opinion on the first appeal is reported in 241 S.W.2d 658. A majority of the court there held that the evidence was sufficient to raise issues of fact as to whether defendants held possession of the property as trustee, co-tenant or tenant of plaintiff, whether their possession was adverse, as adverse possession is defined by Art. 5515 V.A.C.S., and that therefore the trial court erred in directing a verdict against plaintiff. Chief Justice Price dissented on the grounds that the evidence was insufficient to raise the issue of an express, resulting or constructive trust, and showed as a matter of law a repudiation and such notice thereof to appellant as to set in motion the statute of limitations if appellant ever had any interest in the land, and therefore as a matter of law such interest was barred by the applicable statute of limitations. See 241 S.W.2d loc. cit. 664–665.

A detailed statement of the evidence appears in the opinion on the former appeal. As pointed out by appellees, the facts developed on the second trial are substantially the same as those developed on the first trial and outlined in the opinion, with the exception that on the second trial there was evidence that appellant was claiming the north one-half of the property only, rather than an undivided interest in the entire half section.

In view of the nature of appellant's nineteen points, which are quite lengthy, we think it will aid in an understanding of the material questions involved to reproduce here the jury's verdict in full. The issues which were submitted and answered, and the answers thereto, and one issue on which the jury failed to agree and answer thereto was waived by the parties, were:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that at or shortly prior to the execution of the deed dated September 18, 1923, conveying the land in controversy to the defendant, A. E. Dickens, the plaintiff, Mrs. Laura Dickens, and said defendant orally agreed that said plaintiff would pay the down payment required on the purchase of said land, and that the plaintiff and said defendant would each own an equal undivided interest in said land, and that the balance of the purchase price was to be paid from the proceeds from the crops to be produced from said land?

"Answer: No.

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that in 1927, the plaintiff, Laura Dickens, and the defendant, A. E. Dickens, entered into an oral agreement whereby the plaintiff, Laura Dickens, was to acquire title to the north half of the property in controversy? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 7.

"Do you find from a preponderance of the evidence that the payments to be made by Laura Dickens for the north half were to come from the rentals accruing to her from the crops raised thereon by A. E. Dickens subsequent to 1927? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 8.

"Do you find from a preponderance of the evidence that the rents and revenues from the crops accruing to the plaintiff, Laura Dickens, after 1927 and before January 16, 1950, from the north half of said land in controversy, were sufficient to pay one-half of the entire purchase price of the 320 acre tract? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 9A.

"Do you find from a preponderance of the evidence that at or prior to the time the land was purchased in 1923 it was agreed between the plaintiff, Mrs. Laura Dickens, and the defendant A. E. Dickens, that A. E. Dickens was to purchase and receive a deed to an undivided one-half interest in the land in controversy, and that Mrs. Laura Dickens was to purchase and receive a deed to an undivided one-half interest in the said land? Answer 'yes' or 'no'.

"Answer: No.

"Special Issue No. 10.

"Do you find from a preponderance of the evidence that at or before the time the land was purchased in 1923 it was agreed between Mrs. Laura Dickens and the defendant, A. E. Dickens, that Mrs. Laura Dickens was to have the north one-half of the tract of land in controversy and A. E. Dickens was to have the south one-half of the land in controversy? Answer 'yes' or 'no'.

"Answer: No.

"Special Issue No. 11.

"Do you find from a preponderance of the evidence that at or prior to the time the land was purchased in 1923 it was agreed between the plaintiff, Mrs. Laura Dickens, and the defendant, A. E. Dickens, that Mrs. Laura Dickens was to receive a deed to the north one-half of the tract of land and that A. E. Dickens was to receive a deed to the south one-half of the tract of land? Answer 'yes' or 'no'.

"Answer: No.

"Special Issue 12–A.

"Do you find from a preponderance of the evidence that the plaintiff, Mrs. Laura Dickens, ever unqualifiedly obligated herself to pay one-half of the vendor's lien notes payable to J. O. Jones and J. J. Lane, and one-half of the State debt? Answer 'yes' or 'no'.

"Answer: No.

"Special Issue No. 13.

"Do you find from a preponderance of the evidence that the $320 representing the initial payment on the land was paid from the sole funds of A. E. Dickens? Answer 'yes' or 'no'.

"Answer: No.

"Special Issue No. 14.

"Do you find from a preponderance of the evidence that the only interest, if any, in the property which the defendant, A. E. Dickens, ever promised to convey to the plaintiff, Mrs. Laura Dickens, was the north one-half of the 320 acre tract? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 15.

"Do you find from a preponderance of the evidence that the plaintiff, Mrs. Laura Dickens, failed to use reasonable diligence by not filing this suit until January 16, 1950? Answer She failed or She did not fail.

"Answer: She failed.

"Special Issue No. 16.

"Do you find from a preponderance of the evidence that the defendant, A. E. Dickens and wife, in person or through a tenant, had and held peaceable adverse possession of the land in controversy under title or color or title, as the same is defined herein, paying the taxes thereon, for any period of three (3) consecutive years prior to January 16, 1950? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 17.

"Do you find from a preponderance of the evidence that the defendant, A. E. Dickens and wife, in person or through a tenant, had and held peaceable and adverse possession of the land in controversy, cultivating, using, or enjoying the same, and paying all taxes thereon and claiming under a deed, or deeds, duly registered, for any period of five (5) consecutive years prior to January 16, 1950? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 18.

"Do you find from a preponderance of the evidence in this case that the defendants, A. E. Dickens and wife, either in person or through a tenant, held peaceable and adverse possession of the land in controversy in this suit, cultivating, using, or enjoying the same for any period of ten (10) consecutive years or longer prior to January 16, 1950? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 19.

"Do you find from a preponderance of the evidence in this case that the plaintiff, Mrs. Laura Dickens, knew that A. E. Dickens and wife were claiming the property in controversy in this suit adversely to the plaintiff, Mrs. Laura Dickens, or that A. E. Dickens was asserting an adverse pos-

session against the plaintiff, Mrs. Laura Dickens of such unequivocal notoriety that the plaintiff, Mrs. Laura Dickens would be presumed to have notice of such adverse claim? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 20A.

"Do you find from a preponderance of the evidence that the defendant, A. E. Dickens, repudiated the claim, if any, of the plaintiff Mrs. Laura Dickens, at any time prior to the filing of this lawsuit on January 16, 1950? Answer 'yes' or 'no'.

"Answer: Yes.

"If you have answered the foregoing Special Issue No. 20A 'yes', then answer the following special issue, but otherwise do not answer the following special issue.

"Special Issue No. 20B.

"Approximately when do you find from a preponderance of the evidence such claim, if any, was repudiated, if it was?

"Answer: ———.

"If you have answered Special Issue No. 20A 'yes', and in that event only, then answer Special Issue No. 20C.

"Special Issue No. 20C.

"Do you find from a preponderance of the evidence that the plaintiff, Mrs. Laura Dickens, had notice of such repudiation? Answer 'yes' or 'no'.

"Answer: Yes.

"Special Issue No. 21.

"Do you find from a preponderance of the evidence that the defendant, A. E. Dickens, first promised in 1927 the plaintiff, Mrs. Laura Dickens, to convey to her a part of the land, if he did so promise? Answer 'yes' or 'no'.

"Answer: Yes."

All of appellant's points center around four main propositions: First, that in view of the jury's answer to Special Issue No. 21 and the uncontroverted evidence which showed that at least some of the original vendor's lien notes were unpaid in 1927, and the jury's answers to Special Issues Nos. 14, 6, 7 and 8, and the undisputed evidence showing that defendants received all the rents and revenues accruing to plaintiff from the north one-half of the property and applied same to the payment of the purchase money notes and State debt until same were paid, it was established as a matter of law that appellee A. E. Dickens held the north one-half of the 320 acres in trust for appellant; Second: That defendants having expressly waived an answer to Special Issue No. 20B, they failed to establish their defenses of limitations, laches, and stale demand, since it was essential that they show repudiation of the trust at such time as would put the applicable Statute of Limitation in motion; Third: That the court erred in overruling plaintiff's objections to the charge defining the term "adverse possession" and in refusing to give her requested instruction in connection therewith; and Fourth: That the court erred in refusing to permit plaintiff to file a trial amendment claiming in the alternative the north one-half ·of the 320 acres rather than an undivided interest therein.

■ In support of her first proposition appellant relies heavily on the case of Johnson v. Smith, 115 Tex. 193, 280 S.W. 158. While there are some expressions in our former opinion to the contrary which are probably due to a disagreement as to the disposition of the case, we have reached the conclusion, after careful consideration, that the facts of this case do bring it within the rule of Johnson v. Smith as enunciated by the Supreme Court, and that under the undisputed evidence and jury findings appellee A. E. Dickens did hold some interest in the property in trust for appellant after the oral agreement of 1927. It is true that appellant did not unqualifiedly personally obligate herself to pay any part of the original vendor's lien notes, but she did agree that the revenues from her portion of the property should be applied to this purpose, and such revenues were so applied. This, as we understand Johnson v. Smith, was sufficient to establish a trust and take the oral agreement out of the statute of frauds.

■ However, we have reached the conclusion that appellant's second proposition cannot be sustained. The general findings on limitation grounded on adverse possession undoubtedly included findings of repudiation of the' trust and notice in such time as was necessary to put the applicable statute in motion. Repudiation is necessarily implied in the jury's finding that Dickens held this land adversely to his mother for periods of 5 and 10 years, especially in view of the court's definition of "adverse" and "hostile", and the failure of the jury to fix the exact date does not destroy these findings in the light of the well-recognized rule that all presumptions possible must be indulged in favor of the verdict. It is a necessary implication therefore that the repudiation must have occurred at a time in harmony with and in support of the findings on limitations. It must be noted that the jury expressly found that Dickens repudiated the trust, and in such manner that his mother did or should have known it. We think the case of Meaders v. Moore, 134 Tex. 127, 132 S.W. 2d 256, 258, 125 A.L.R. 817, Com.App. opinion adopted, supports this view. There the court said:

"The general finding in favor of adverse possession undoubtedly included a finding of hostility and continuity."

Especially is this so since as pointed out in our former opinion there were many circumstances tending to show a repudiation of which appellant had notice prior to the filing of the suit. We also think the circumstances were such as to warrant a finding that appellant had notice of such repudiation in sufficient time to put the five or ten year statute in motion, and that an answer to Special Issue No. 20B was unnecessary to establish the defense of limitations.

In connection with the issues on limitation the court charged:

"* * * that by the term 'adverse possession' as used in these issues, is meant an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another; however, you are instructed that in order for the possession for the period in question to be adverse it is not necessary for the initial occupancy of the defendant Dickens to be hostile, but instead it is sufficient if, at the commencement of any period of peaceable possession, the land in question was actually and visibly appropriated and continued under a claim of right inconsistent with and hostile to the claim of another."

Plaintiff objected and excepted to this portion of the charge:

"* * * for the reason that nowhere in said charge, or in said definition, does the Court further instruct the jury that the possession will not become adverse as between co-tenants or trustee and beneficiary until such co-tenancy or trust' relationship, if any, has been repudiated by the person claiming the property adversely, and, in effect, by such instruction the Court permits the jury to find that the defendants held such land adversely to plaintiff without regard to whether defendants had repudiated plaintiff's claim to the property in such a manner as to bring home to the plaintiff notice or knowledge of such repudiation."

and in connection with such objection requested the court to charge:

"You are further instructed that as between co-tenants of property, or as between a trustee holding property in trust for his beneficiary, possession does not become adverse until the one claiming such property adversely repudiates his co-tenant's interest, or repudiates the interest of his beneficiary under the trust, if any, in such manner as to bring home to his co-tenant or beneficiary notice or knowledge of such repudiation."

This request was refused. The court further charged:

"* * * by the word 'hostile', as used in these issues or instructions, is meant a holding with the intent to claim it as his own to the exclusion of all others."

and that

"by the term or phrase 'claim of right' as used in this charge, means an intention to claim the land as his own."

■■ Appellant contends that under the charge as given the jury was permitted to find that appellees held the land adversely to appellant without regard to whether or not they had repudiated the trust with notice thereof to appellant at such time as would enable appellees to mature title in this property under some applicable statute of limitations. We do not so construe the charge. That portion of it relating to the term "adverse possession" may be inartistically drawn, but when it is considered with the definitions of the word "hostile" and the phrase "claim of right", as it must be, there can be no serious doubt that it substantially complies with the statutory definition of adverse possession. Art. 5515 V.A.C.S. Certainly it requires that an actual and visible appropriation of the land under claim of right hostile to the claim of another for the applicable statutory period is necessary, which is inconsistent with the claim that under it defendants could have put the statute in motion without repudiation of the trust. In view of the finding in answer to Special Issue No. 19 it seems improbable that the jury could have been misled as contended by plaintiff because of the definition of adverse possession. The requested instruction would have burdened the charge with the definition of evidentiary matters and would have been improper. White v. Haynes, Tex.Civ.App.,

60 S.W.2d 275, (wr. dis.) These conclusions render discussion of appellant's fourth proposition unnecessary.

All of appellant's points are overruled and the judgment of the trial court is affirmed.